The HARTFORD ACCIDENT AND IN-DEMNITY COMPANY, a Connecticut Corporation, Plaintiff-Appellee,

v.

GULF INSURANCE COMPANY, a Missouri Corporation, Defendant-Appellant.

No. 85–1203.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1985.

Decided Nov. 13, 1985.

As Amended on Denial of Rehearing and Rehearing In Banc Dec. 10, 1985.

Roger R. Clayton, Heyl, Royster, Voelker & Allen, Peoria, Ill., for appellant.

David B. Mueller, Cassidy & Mueller, Peoria, Ill., for appellee.

Before CUDAHY and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

CUDAHY, Circuit Judge.

This is an appeal from a grant of summary judgment by the district court for the Central District of Illinois against the Gulf Insurance Company ("Gulf"). The district court determined that Gulf had wrongfully refused to defend the City of Peoria, Illinois (the "City") in a wrongful death action

and estopped Gulf from denying coverage. We reverse.

In July 1979, the City and the Pleasure Driveway and Park District of Peoria (the "Park District") entered into the Shade Tree Maintenance Intergovernmental Cooperation Agreement (the "Shade Tree Agreement" or the "Agreement"). This Agreement provided, *inter alia*, that the Park District would trim or remove trees and stumps when the City determined them to be dangerous.[1] The Park District agreed to obtain additional insurance to cover any liability arising under the Agreement. For an annual premium of $132, the Park District secured this additional coverage through its primary carrier, the Gulf Insurance Company. An endorsement to the policy named the City as an additional insured.

On December 24, 1979, Laurence Lovell was killed when a silver maple tree owned by the City collapsed on his automobile. While the City had removed limbs from the tree and had been aware of the tree's hazardous condition prior to the Lovell incident, it had never informed the Park District about the tree.

In February 1980, Lovell's estate filed a wrongful death action in an Illinois court against the City and the Park District, asserting that each was negligent in failing to inspect and maintain the tree. One count of negligence alleged that the City:

j. failed to properly supervise the Peoria Park District in the carrying out of said Peoria Park District's duties in connection with the Shade Tree Agreement approved July 13, 1979.

Gulf received notice of the suit from the Park District in March 1980. At that time, it investigated the incident and determined that it had no obligations toward the City with respect to the case because the Shade Tree Agreement did not apply unless the City had asked the Park District to service the tree. The City tendered its defense to the Hartford Insurance Company ("Hartford"), its primary carrier. In December 1980, some 10 months after receiving notice of the claim and after receiving a letter from Gulf stating that it would seek contribution against the City, Hartford's attorney, David B. Mueller, wrote Gulf's attorney, Robert V. Dewey, a letter asking Gulf to assume the City's defense.[2] Gulf refused. Hartford eventually settled the case on behalf of the City for $188,999.28. Gulf settled on behalf of the Park District for $15,000. This suit followed.

Because the Lovell complaint asserted a claim that potentially fell within the terms of the City's policy with Gulf, the district court dismissed the jury hearing the case after plaintiff's presentation of evidence. The court granted Hartford's motion for estoppel, issuing its findings of fact and conclusions of law in Hartford's favor. The court held Gulf responsible for Hartford's costs and expenses, including attorney's fees and the sum paid in settling the Lovell suit and including prejudgment interest of five per cent running from May 1982. In so doing, we believe the district court erred.

1. The pertinent part of the agreement provides:
   The Park District agrees to maintain trees located on City property. Maintenance of the trees is to include proper pruning or removal of trees, including stumps as determined by the City to be dangerous and otherwise obstructing public safety. . . .
   Initially the City will receive calls concerning trees needing removal or pruning and will make work assignments to the Park District.

2. The letter states:
   Dear Bob:
   Following your lead I enclose a notice of intention to seek contribution on the part of the City against your client, Pleasure Drive-way and Park District of Peoria. Further, I would direct your attention to the Park District's liability policy which specifically includes the City as an additional party insured. Based upon the provisions of that policy, we hereby request that Gulf Insurance Group immediately undertake the defense of the City and indemnify it against any sums which it may become legally obligated to pay as damages because of the claims of the plaintiffs in this cause. We would appreciate a prompt response.
   Very truly yours,
   David B. Mueller

## I.

Insurance companies have a broad duty to defend their clients. "[The] duty to defend is determined by examining the 'four corners' of the [pertinent] complaint and the policy to determine if the contents of the complaint, when taken at face value, allege a cause of action which is potentially covered by the policy." *Dreis & Krump Manufacturing Co. v. Phoenix Insurance Co.*, 548 F.2d 681, 683 (7th Cir.1977). *See Maryland Casualty Co. v. Chicago & Northwestern Transportation Co.*, 126 Ill. App.3d 150, 152, 81 Ill.Dec. 289, 291, 466 N.E.2d 1091, 1093 (1984); *Sims v. Illinois National Casualty Co.*, 43 Ill.App.2d 184, 193, 193 N.E.2d 123, 127 (1963). The complaint must be liberally construed and all doubts about coverage resolved in favor of the insured. *See Sentry Insurance Co. v. S & L Home Heating Co.*, 91 Ill.App.3d 687, 689, 47 Ill.Dec. 102, 104, 414 N.E.2d 1218, 1220 (1980), *McFadyen v. North River Insurance Co.*, 62 Ill.App.2d 164, 168, 209 N.E.2d 833, 836 (1965).

The duty to defend is broader than the duty to pay. *Reis v. Aetna Casualty and Surety Co.*, 69 Ill.App.3d 777, 784, 25 Ill. Dec. 824, 829, 387 N.E.2d 700, 705 (1978). An insurer must defend even if the allegations are groundless, false or fraudulent. *Thornton v. Paul*, 74 Ill.2d 132, 144, 23 Ill.Dec. 541, 545, 384 N.E.2d 335, 339 (1978). This duty is not extinguished merely because the insurer knows of facts which show the claim to fall outside policy coverage. *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 451, 42 Ill.Dec. 219, 224, 408 N.E.2d 928, 933 (1980), *Sims v. Illinois National Casualty Co., supra*, 43 Ill.App.3d at 193, 193 N.E.2d at 127.

Strict enforcement of the duty to defend serves the state's interest in assuring that an insured is adequately represented in litigation. An insurance company that believes it is not liable for coverage may protect its interests through a declaratory judgment proceeding or may defend the suit under a reservation of its right to seek repayment later. *See Country Mutual Insurance Co. v. Murray*, 97 Ill.App.2d 61, 73, 239 N.E.2d 498, 505 (1968). Once a claim is tendered to an insurance company for defense, the company can "safely and justifiably refuse to defend only when the allegations clearly show that the claim is beyond the policy coverage." *Elas v. State Farm Mutual Auto Insurance Co.*, 39 Ill. App.3d 944, 947, 352 N.E.2d 60, 62 (1976); *see also Solo Cup v. Federal Insurance Co.*, 619 F.2d 1178, 1183 (7th Cir.), *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) ("An insurer may not refuse the tendered defense of· an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage.").

## II.

Under Illinois law, an insurance company that wrongfully refuses to defend a legitimately tendered claim will later be estopped from denying coverage. *See Maneikis v. St. Paul Insurance Co.*, 655 F.2d 818, 821–22 (7th Cir.1981); *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 452, 42 Ill.Dec. 219, 225, 408 N.E.2d 928, 934 (1980), *Aetna Casualty and Surety Co. v. Coronet Insurance Co.*, 44 Ill. App.3d 744, 749, 3 Ill.Dec. 371, 374, 358 N.E.2d 914, 917 (1976). Once the principle of estoppel is applied, the insurer becomes liable for any judgment entered against the insured or any settlement made by the insured, absent mitigating factors. *See Palmer v. Sunberg*, 71 Ill.App.2d 22, 33, 217 N.E.2d 463, 466–67 (1966).

Thus, in *Elas v. State Farm Mutual Auto Insurance Co.*, 39 Ill.App.3d 944, 352 N.E.2d 60 (1976), an insurance company that refused an individual's request to defend his auto accident claim because of an arguable policy exclusion was later estopped from denying coverage. Similarly, in *Aetna Casualty, supra*, a friend of the insured had an accident while. driving the insured's automobile. While the friend was arguably covered by the insured's policy, the insurance company refused his request for defense. As a result, the court

held that the insurance company was estopped from denying coverage.

### III.

■ Ordinarily, however, before an insurer will be required to provide a defense or risk estoppel, the insured—or at least an insured that is knowledgeable and sophisticated—must tender the claim. As this court has stated, "The defense obligation is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." *Solo Cup v. Federal Insurance Co.*, 619 F.2d 1178, 1183 (7th Cir.1980). And, as Illinois courts have held, "there is no estoppel where the insurer was given no opportunity to defend." *La Rotunda, supra*, 87 Ill.App.3d at 452, 42 Ill.Dec. at 225, 408 N.E.2d at 934; *McFadyen v. North River Insurance Co.*, 62 Ill.App.2d 164, 168, 209 N.E.2d 833, 836 (1965).

Under the circumstances of the case before us, we cannot say that the City's defense was adequately tendered to Gulf. No official of the City ever asked Gulf to defend Peoria. Rather the defense was tendered to Gulf 10 months after the litigation began by the attorney for Hartford, the City's primary insurance carrier, acting on his own initiative. His letter contains no indication that he was acting at the behest of the City.[3] Nor is there any other evidence or even an allegation that the attorney was carrying out the orders or wishes of the City. On the contrary, Gulf alleges that had it been allowed to present evidence, City officials would have testified that they believed Gulf owed Peoria no obligation regarding the Lovell suit. This case thus differs from *Aetna Casualty v.*

*Coronet* and *Elas v. State Farm,* where the insured requested a defense and was turned down.

This case also differs from *Aetna* and *Elas* in that the insured in those cases was an individual unaccustomed to the complexities of litigation. Here the insured is a large and sophisticated governmental entity that is advised and assisted by its own counsel, who is a City official. While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than a letter from a rival insurance company 10 months after the process of litigation has begun.[4]

■ Nor can the tender requirement be said to be satisfied because Gulf knew of the suit from the outset as the Park District's insurer. Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. *See Solo Cup v. Federal Insurance Co.,* 619 F.2d 1178, 1183 (7th Cir.1980). An insurance company is not required to intermeddle officiously where its services have not been requested. *Cf. Oda v. Highway Insurance Co.,* 44 Ill.App.2d 235, 253, 194 N.E.2d 489, 499 (1963) (insurance company need not become "intermeddler in the contests of others").

Because the City of Peoria never tendered its defense in the Lovell suit to Gulf, Gulf had no duty to defend and there

**3.** *See supra* note 2. We recognize that, as Hartford's attorney, Mr. Mueller had the authority to represent the City in the Lovell lawsuit. But the authority to represent the City for that purpose is not necessarily the authority to transfer the lawsuit to another insurance company and another attorney. In view of all the facts which characterize this particular situation, we cannot say that Gulf received a tender of defense from the City.

**4.** In addition, of course, here the City was being defended by another insurance company—the

company to which it had tendered its defense. Under these circumstances, it would seem even more appropriate to require the City, a knowledgeable and sophisticated insured, to have actually required or requested Gulf to assume the City's defense before finding Gulf in breach of its duty to defend. *Cf. Aetna Casualty, supra,* 3 Ill.Dec. at 374, 358 N.E.2d at 917, (estoppel is appropriate against an insurance company that refuses a tendered claim despite the fact that a second insurer assumed the insured's defense).

1384

was no occasion to apply the principle of estoppel. In denying Gulf the opportunity to present evidence showing it bore no responsibility for the City, the district court erred. Accordingly, we reverse and remand for proceedings not inconsistent with this opinion.

JUDGMENT REVERSED AND REMANDED.