The **HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut Corporation, Plaintiff–Appellant,**

v.

**GULF INSURANCE COMPANY, a Missouri Corporation, Defendant–Appellee.**

No. 86–2425.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1987.

Decided Jan. 15, 1988.

David B. Mueller, Cassidy & Mueller, Peoria, Ill., for plaintiff-appellant.

Roger R. Clayton, Heyl, Royster, Voelker & Allen, Peoria, Ill., for defendant-appellee.

Before WOOD, POSNER, and MANION, Circuit Judges.

MANION, Circuit Judge.

In this diversity action, plaintiff The Hartford Accident and Indemnity Company ("Hartford"), appeals from a district court order granting summary judgment to defendant Gulf Insurance Company ("Gulf"). The district court granted a summary judgment to Gulf based upon this court's reversal and remand of a summary judgment the district court had previously entered in Hartford's favor.

## I.

In 1979, the City of Peoria, Illinois ("City"), as part of a program to cut spending, decided to stop cutting trees itself and to transfer its forestry operations to a more efficient provider of those services. Pursuant to a written agreement ("Shade Tree Agreement"), the Pleasure Driveway and Park District of Peoria ("Park District") agreed to prune or remove trees determined dangerous by the City. The Shade Tree Agreement referred to the City as "a municipal corporation" and the Park District as "a unit of local government," but the record does not disclose their precise relationship.

In the Shade Tree Agreement, the Park District agreed to obtain insurance "to cover the program." The Park District obtained that coverage by adding a general purchase endorsement to its comprehensive general liability policy from defendant Gulf. That endorsement designated the City as an additional insured "as their interest may appear for this operation" and covered "operations of Tree Trimming performed in conjunction with the [Shade Tree] agreement." The policy elsewhere imposed upon Gulf a "duty to defend any suit" to which its insurance applied. The City reimbursed the Park District for the modest $132 premium Gulf charged for the additional coverage.

On December 24, 1979, Laurence Lovell was killed when a tree located on City property fell on his car. The City had never asked the Park District to work on

that tree, nor had the Park District done so voluntarily. Lovell's estate sued both the City and the Park District in an Illinois state court for wrongful death. The complaint alleged that the City and the Park District negligently failed to inspect and maintain the tree, and that the City negligently failed to "properly supervise" the Park District's work under the Shade Tree Agreement. The complaint did not allege that the City had determined the tree to be dangerous or that the Park District had touched it.

Gulf accepted defense of the Park District in state court, but decided internally not to defend the City (who had not asked Gulf to defend it). Gulf did not communicate this decision to the City. The City tendered its defense to Hartford, its general liability carrier.

Ten months after the lawsuit began, Hartford's attorney, David Mueller, wrote to Gulf and asked Gulf to defend the City. Gulf refused on the grounds that its policy did not apply to all trees but only those which the City designated as dangerous and told the Park District to correct.

After Gulf refused to defend the City, Hartford settled the underlying lawsuit on the City's behalf for approximately $190,000. Its attorney's fees and costs were approximately $7,000. Gulf settled on behalf of the Park District for $15,000. Hartford, believing that it covered the City only for the excess over any coverage provided by Gulf, then began this diversity action to recover against Gulf.

## II.

Under governing Illinois insurance law, then and now, "[a]n insurer which contracts to defend its insured must defend any action brought against the insured if the complaint sets forth allegations that bring the claim within or potentially within the risks covered by the policy." *LaRotunda v. Royal Globe Ins. Co.*, 87 Ill. App.3d 446, 42 Ill.Dec. 219, 224, 408 N.E.2d 928, 933 (1980) [collecting cases]. *Accord Burlington N. R.R. Co. v. Illinois Emcasco Ins. Co.*, 158 Ill.App.3d 783, 110 Ill.Dec. 599, 601, 511 N.E.2d 776, 778 (1987). If—

after the insured tenders its defense—the insurer does not defend its insured against claims its policy possibly covers, then it is "estopped" from denying coverage to its insured should the insured be forced to pay damages through a judgment or a settlement. An insurer may avoid that predicament by defending under a reservation of rights or by seeking a declaratory judgment on coverage. *LaRotunda*, 42 Ill.Dec. at 225–26, 408 N.E.2d at 934–35.

An insurer's duty to defend, however, does not arise and "there is no estoppel where the insurer was given no opportunity to defend...." *LaRotunda*, 42 Ill.Dec. at 225, 408 N.E.2d at 934. Timely tender is what gives the insurer an "opportunity to defend." The parties have proceeded throughout on the implicit assumption that when an insured sues its insurer for breaching a duty to defend, under Illinois law the insured must prove in its case-in-chief that it timely tendered its defense. We will not now disturb their assumption. *But see City of West Haven v. Liberty Mut. Ins. Co.*, 639 F.Supp. 1012, 1017–19 (D.Conn.1986) (applying Connecticut law) (holding that an insured's failure to ask its insurer to defend is an affirmative defense for the insurer to raise).

In its complaint, Hartford sought a declaratory judgment that Gulf was obligated to indemnify it (or at least to contribute in proportion to the limits in the respective policies which apply where other insurance exists) for the sums it had paid on the City's behalf to settle the state court action, plus its costs and attorney's fees. Hartford alleged that Gulf's policy with the Park District covered the policy's insureds—including the City—for the occurrences alleged by the estate. Hartford further alleged:

> [D]espite demands ... made by the City ... and its counsel, the defendant, GULF INSURANCE COMPANY, denied coverage to the plaintiff and refused to undertake its defense....

Therefore, Hartford alleged, Gulf breached its duty to defend. Gulf answered with one paragraph denying all these allegations.

The district court set a trial date and the parties prepared for the pretrial conference. According to its pretrial memorandum, Hartford expected to prove at trial that Gulf "wrongfully refused the tendered defense of the City" and that Gulf "is presently estopped to deny coverage to the City...." Gulf itself, in its pretrial memorandum, did not focus on who tendered the City's defense; it offered to stipulate "[t]hat the defense of the City in the Lovell action was tendered to and refused by Gulf." The final pretrial order, however, contained a stipulation which specified who tendered the City's defense:

6. That the defense of the City in the foregoing action was tendered by Hartford to Gulf and was refused by Gulf.

Gulf in its pretrial memorandum also listed the following broadly worded issue as among those contested:

12. Whether Gulf properly declined the tender of the City's defense.

The final pretrial order stated that it was incorporating each party's list of contested issues.

The district court's standing order permitted the parties to consider at the final pretrial conference whether further trial briefs would be helpful. The parties agreed to file such briefs. In a brief it served upon Hartford before trial, Gulf, while acknowledging tender by Hartford, vigorously argued that the City never tendered its defense to Gulf:

In good faith, Gulf declined the defense of the City for the following reasons:

. . . .

3. The City and its legal department *never tendered its defense* to Gulf, nor did it request that Gulf indemnify the City, because the City was fully aware that the insurance provision of the Agreement was not applicable. Rather, *The Hartford* asked that Gulf defend the City.... At that time, The Hartford had been assuming the defense of the City for approximately ten (10) months.

(Emphasis in original.) Later on, in a section setting forth points and authorities, Gulf again argued that it "should not be estopped from denying coverage on the policy, since the City never tendered its defense to Gulf...." Gulf concluded its trial brief by reiterating that "[a]n insured cannot claim damages from an insurer's alleged breach of a duty to defend where the insured *never tendered its defense* to the insurer." (Emphasis in original.)

The jury trial began as scheduled. Hartford introduced no evidence about who submitted the tender. Hartford introduced evidence showing that Gulf knew about a claim against the City possibly covered under its policy and refused to defend.

After presenting evidence for two days, but before resting its case, Hartford moved for a "declaration of estoppel" against Gulf. Hartford requested that the court declare that "as matter of law" Gulf had breached its duty to defend. Hartford's motion did not mention tender. Rather, Hartford argued simply that the estate's claims were covered under Gulf's policy and that Gulf had no reason—such as a conflict of interest—not to defend. Hartford's motion concluded that if Gulf were estopped from denying coverage, no other fact questions for the jury would remain.

The court correctly treated Hartford's motion as one for summary judgment. After oral argument outside the jury's presence, none of which touched upon whether tender by Hartford's counsel was sufficient, the district court granted Hartford's summary judgment motion. The district court found that because the estate's complaint asserted a claim potentially within Gulf's coverage of the City, Gulf had a duty to defend (even though ultimately Gulf may not have had a duty to indemnify). By granting the motion, the court relieved Hartford from introducing further evidence.

Gulf requested leave to make an offer of proof on estoppel. Hartford objected to this offer of proof on grounds that the court had already decided that issue. The court overruled Hartford's objection and instructed Gulf to file its offer of proof in writing. Hartford then rested its case. While Hartford now claims that it rested only so as to accommodate Gulf and to

allow it to proceed, see Fed.R.Evid. 103(a)(2), the trial transcript reveals that Hartford never stated why it was resting. After denying Gulf's motion for a directed verdict, the court discharged the jury.

The next day Gulf filed a lengthy offer of proof which included but was not limited to extensive excerpts from several depositions. In this offer of proof, Gulf raised the issue of proper tender. Specifically, Gulf asserted that the City Manager, James Daken, would testify that, to his knowledge, no City official or lawyer ever asked Gulf to defend the City. The pretrial order had listed Daken as a witness for both parties, though he did not testify as part of Hartford's case. Gulf had taken Daken's deposition, but did not ask him about tender at that time. In addition, Gulf's offer of proof promised that Robert Kellison, a Gulf claims manager, would testify that no City employee or lawyer had ever requested Gulf to defend it.

Hartford did not present any evidence about tender in its response to Gulf's offer of proof. While Hartford argued that Daken's testimony was "incompetent" and "replete with hearsay," and that Kellison's was irrelevant, it did not contest that Daken and Kellison would have testified as Gulf suggested.

The court subsequently issued its findings. As Gulf had contended, the court found that

[a]t no time did any employee of the City of Peoria or its legal department ever ask the Peoria Park District or Gulf to assume the defense of the City with regard to the Lovell Complaint or to provide coverage of any kind....

But the court nonetheless found that "the City, through its counsel, tendered defense...." As Gulf's policy potentially covered the estate's allegations against the City, Gulf had breached its duty to defend the City. The court entered judgment for Hartford, and Gulf appealed.

This court reversed the district court's judgment, holding that Hartford had not proven estoppel. *Hartford Acc. and Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380 (7th Cir.1985). The panel reasoned that

tender, a necessary element for estoppel, was inadequate if Hartford's lawyer had not acted as the City's agent:

[B]efore an insurer will be required to provide a defense or risk estoppel, the insured—or at least an insured that is knowledgeable and sophisticated—must tender the claim.... "The defense obligation is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." *Solo Cup v. Federal Insurance Co.*, 619 F.2d 1178, 1183 (7th Cir. 1980). And, as Illinois courts have held, "there is no estoppel where the insurer was given no opportunity to defend." *La Rotunda, supra,* 87 Ill.App.3d at 452, 42 Ill.Dec. at 225, 408 N.E.2d at 934; *McFadyen v. North River Insurance Co.,* 62 Ill.App.2d 164, 168, 209 N.E.2d 833, 836 (1965).

... [W]e cannot say that the City's defense was adequately tendered to Gulf. No official of the City ever asked Gulf to defend Peoria. Rather the defense was tendered to Gulf 10 months after the litigation began by the attorney for Hartford, the City's primary insurance carrier, acting on his own initiative. His letter contains no indication that he was acting at the behest of the City. Nor is there any other evidence or even an allegation that the attorney was carrying out the orders or wishes of the City. On the contrary, Gulf alleges that had it been allowed to present evidence, City officials would have testified that they believed Gulf owed Peoria no obligation regarding the Lovell suit.

\*   \*   \*   \*   \*   \*

Nor can the tender requirement ... be satisfied because Gulf knew of the suit from the outset as the Park District's insurer.... What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired.

776 F.2d at 1383 (footnote omitted).

In reaching this holding, the panel applied old Illinois insurance principles, as shown by the two Illinois cases it cited,

*LaRotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 42 Ill.Dec. 219, 225, 408 N.E.2d 928, 934 (1980) and *McFadyen v. North River Ins. Co.,* 62 Ill.App.2d 164, 209 N.E.2d 833, 836 (1965). Those cases state a rule that no estoppel can arise where the insured does not give the insurer an "opportunity to defend." In this regard, the *LaRotunda* court expressly mentioned several times that the insured had tendered its defense. 42 Ill.Dec. at 222, 223, 225, 408 N.E.2d at 931, 932, 934. The third case cited, from the Seventh Circuit, stated that "[t]he defense obligation is triggered when the insured tenders the defense of an action which is *potentially* within the policy coverage." *Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1183 (7th Cir.), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (emphasis in original); *cf. Western Chain Co. v. American Mut. Liab. Ins. Co.,* 527 F.2d 986, 989–90 (7th Cir.1975) (applying Illinois law) (where insured did not forward Mississippi summons to insurer until after default judgment entered against it, insurer had no duty to attack constitutionality of Mississippi "long arm" statute or enforceability of default judgment in Illinois); *Detroit Auto. Inter–Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414, 417 (1980) ("Absent a request, an insurer has no duty to defend an insured."); *Manny v. Estate of Anderson,* 117 Ariz. 548, 574 P.2d 36, 38 (Ariz.Ct.App. 1977) ("the obligation to defend does not arise until the insurer is presented with a complaint.").

We need not decide now whether "tender" means an actual written request from the insured or whether any method is sufficient that affords an insurer "knowledge that the insurer's assistance is desired" by the insured. *See City of West Haven, supra,* 639 F.Supp at 1019. Hartford did not offer proof of either.

The panel therefore reversed the district court's grant of summary judgment to Hartford and remanded "for proceedings not inconsistent with this opinion." 776 F.2d at 1384.

### III.

On remand, Gulf renewed its motion for a directed verdict and moved in the alternative for summary judgment. Gulf argued that Hartford had concluded its case-in-chief and could not offer further evidence. Gulf also contended that Hartford would in any event not be helped by further evidence because the panel had "already concluded that Attorney Mueller was incapable of tendering the city's defense to Gulf as a matter of law."

Hartford moved to reopen the case to offer evidence to prove proper tender. Hartford argued that our reversing a summary judgment previously granted in its favor meant only that insufficient evidence to prove tender existed at the time it moved for summary judgment. Hartford protested that no pretrial document indicated that Gulf contested the tender's sufficiency, and that in fact the parties had stipulated in the pretrial order that the City's defense had been tendered to Gulf and rejected.

Had Hartford reopened its case, it apparently could have introduced evidence sufficient to create genuine factual issues for trial regarding Gulf's opportunity to defend. *See* Fed.R.Civ.P. 56(e). Hartford offered the City's corporate counsel's affidavit that the City had authorized Mueller, as counsel for Hartford, to demand a defense from Gulf.

### IV.

The district court stated that it was "definitely not thrilled with the situation in which it finds itself and, candidly, believes [Hartford] has been caught between the colloquial rock and hard place." The court read this court's mandate as requiring it to determine—to dispose of the motions before it—whether Hartford's failure to prove adequate tender was excused by a reasonable belief that Gulf did not contest tender. The court concluded "that proper tender of the defense to Gulf by the City was a contested issue, [and] that plaintiff failed to sustain its burden of proving that such tender had been made...." The court recognized that the pretrial order was ambiguous, and that reading the pre-

trial order alone, Hartford reasonably could have believed that the tender's sufficiency was not contested:

Nevertheless, Plaintiff was served with Defendant's trial brief which clarified its position and demonstrated that the propriety of tender was indeed in issue.

Once the trial brief was filed, Plaintiff was on notice that tender *by the City* was disputed and it had an obligation to produce evidence regarding the ability or the right of counsel for Hartford to tender the defense to Gulf on behalf of the City. No such evidence was presented by Plaintiff prior to the time it rested or in its response to Defendant's offer of proof....

(Emphasis in original.) The court therefore denied Hartford's motion to reopen its case and granted Gulf's motion for a directed verdict or alternatively for summary judgment. The court subsequently entered judgment for Gulf. Hartford appeals.

## V.

■■■ Whether we construe the district court's order as denying Hartford's motion to reopen its case or as granting Gulf's alternative motions for summary judgment or for a directed verdict, what the district court thought it had to decide was whether Hartford lost its chance to present evidence showing adequate tender.

We understand why the district court thought that. In reversing the district court's earlier grant of summary judgment to Hartford, this court conceivably could have rendered summary judgment for Gulf without remanding to the district court. *See International Longshoremen's Ass'n v. Seatrain Lines, Inc.*, 326 F.2d 916, 921 n. 2 (2d Cir.1964). But before awarding summary judgment to an appellant, an appellate court must find that doing so will not "unfairly deprive the other party of the opportunity to present pertinent evidence." *Callahan v. Woods*, 736 F.2d 1269, 1275 (9th Cir.1984); *see Fountain v. Filson*, 336 U.S. 681, 683, 69 S.Ct. 754, 755, 93 L.Ed.2d 371 (1949). The district court reasonably interpreted the fact that the panel did not award summary judgment to Gulf on the

City's inadequate tender as showing that the panel could not determine on the record before it whether Hartford had had a fair chance to present its evidence. If the district court on remand then found that Hartford passed up that opportunity, it would correctly enter judgment for Gulf. *See Callahan, supra*, 736 F.2d at 1275.

This analysis holds if we read the district court's order as denying Hartford's motion to reopen its case. Generally, "this Court's failure to specify that further evidence should be taken on remand could, at most, be construed as leaving a decision on the need to reopen the record to the sound discretion of the trial court." *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 478 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979) (citing *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 (3d Cir.1975), *cert. denied*, 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976)).

If we were to read our earlier opinion the way the district court did, then we would affirm the district court. The district court's finding that Gulf contested adequate tender by the City—and thus that Hartford should have presented evidence to prove it—was not clearly erroneous. The stipulation in the pretrial order that the defense "was tendered by Hartford," when read in light of Gulf's own pretrial memorandum, suggests that the fact of tender was not disputed. But the vigor with which Gulf's trial brief raised the City's failure to tender the defense and Gulf's unrebutted offer of proof about tender makes the district court's findings "plausible in light of the record viewed in its entirety.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

The district court did not clearly err in finding that Hartford had a realistic opportunity to present its evidence earlier. Therefore, it did not abuse its discretion—under its theory of how to read our earlier opinion—in denying Hartford's motion to

reopen its case. This court's earlier opinion did not set forth new law which could not have been anticipated by the parties. *Cf. Skehan,* 590 F.2d at 479 (change in law important factor for district court to consider on motion to reopen); *Callahan,* 736 F.2d at 1275 (declining to award summary judgment on appeal to appellant because "[i]t is possible that the law, before this appeal, was not sufficiently clear to have afforded [appellee] a realistic opportunity to present the relevant facts."). Instead, the previous appellate opinion set forth well-settled Illinois law that the insured must tender its defense before an insurer must defend or risk estoppel. 776 F.2d at 1383.

The panel's distinction between a sophisticated insured and an unsophisticated one reflects the panel's attempt to highlight the lack of any equitable reason to excuse the City's failure to tender. It did not change well-settled Illinois law, as illustrated by the fact that no reported federal or state case has cited the panel's earlier opinion for that distinction. In any event, the panel's distinction is dicta that does not help Hartford, for if anything it suggests lowering the traditional standard only for the unsophisticated, thus affirming the traditional requirement for the City.

Granting Hartford's motion would (most likely) require a new trial with a new jury. And as Hartford's position is cast into doubt by the City Manager's deposition testimony and the failure of Hartford's lawyer's demand letter to mention his agency, failure to reopen the case does not render an obvious miscarriage of justice.

"Failure to put into evidence all the proof necessary for sustaining a judgment is generally fatal. Further, on review, a case is ordinarily not remanded to give a party the opportunity to supply the missing evidence." *Rochez,* 527 F.2d at 894. With no more evidence in the record, no genuine issue would exist as to adequate tender under the "law of the case" set forth in the panel's earlier opinion, *see, e.g., James Burrough Ltd. v. Sign of Beefeater, Inc.,* 572 F.2d 574, 577 (7th Cir.1978) (per curiam). Gulf would be entitled to a directed

verdict or to a summary judgment, as the standards for granting either are the same, *see* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.04[2] (2d ed. 1987); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## VI.

"The opinion delivered by this court, at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate; and, either upon an application for a writ of mandamus, or upon a new appeal, it is for this court to construe its own mandate, and to act accordingly." *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895).

Unfortunately, this case has been tied into a procedural knot. Not only was the pretrial order ambiguous, but apparently so was our remand order "for proceedings not inconsistent with this opinion." 776 F.2d at 1384. As the district court recognized, "[w]ith all due respect to the reviewing panel of the Seventh Circuit, it was not at all clear to [the district court] what was expected of it upon remand." The district court chose one valid interpretation, and did everything faithfully and correctly from that starting point. But we are convinced—based upon our reading of this court's earlier opinion and what happened during the first trial—that the original panel intended something else.

The previous panel focused on what Gulf did not have a chance to do, not on what Hartford did: "In denying Gulf the opportunity to present evidence showing it bore no responsibility for the City, the district court erred." 776 F.2d at 1384. Even though Gulf did contest tender the first time around, Hartford won in the middle of the trial when the district court granted it summary judgment. Theoretically Hartford then could have offered additional evidence to prove proper tender. But it is unrealistic to expect counsel for a plaintiff who has just won to ask the court for leave to present further evidence in case the court's legal theory is wrong. As the dis-

trict court noted in connection with Hartford's failure to respond to Gulf's offer of proof, "Hartford, having rested, and having prevailed ..., presumably lacked motive to respond to the tender issue."

An alternative meaning of remanding "for proceedings not inconsistent" when reversing a summary judgment is that "[t]his would include a motion for summary judgment in the district court by the appellant." 6—Pt. 2 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.27[3] at 56–1563 (2d ed. 1987). The earlier panel intended to remand this case for a new trial unless Gulf could successfully move for summary judgment, with Hartford being given the usual opportunity to oppose such a motion with competent evidence.

The previous panel followed Professor Moore's recommendation that when an appellate court reverses a grant of summary judgment, "in most situations the reversal should be for further proceedings consistent with the appellate court's opinion." *Id.* But what happened here shows the problems created by following that recommendation. We now specify (we hope) more clearly what we wanted.

We reverse the district court's judgment and remand for a new trial. We believe that the previous panel affirmed the district court's conclusion that as a matter of Illinois law the estate's underlying complaint set forth allegations that brought the claim potentially within the risks covered by Gulf's policy, and we restate that holding here. On remand, the trial shall be limited to the issue of whether the City gave Gulf an opportunity to defend, and in particular whether the City adequately tendered its defense to Gulf. Either party may move for summary judgment or a directed verdict if and when appropriate.

REVERSED AND REMANDED WITH INSTRUCTIONS.