FEDERATED MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant (Kathleen Gallagher *et al.*, Defendants).

Second District    No. 2—95—0913

Opinion filed July 24, 1996.

Henry J. Burt, Jr., and Daniel C. McCabe, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellants.

James T. Ferrini, Edward M. Kay, and Richard A. Buchanan, all of Clausen Miller, P.C., of Chicago, for appellee Federated Mutual Insurance Company.

Junie L. Sinson, of Ottosen, Sinson, Trevarthen & Britz, Ltd., of Wheaton, for other appellees.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals the trial court's order granting summary judgment for plaintiff, Federated Mutual Insurance Company (Federated). State Farm contends that the trial court erred because active tender by an unschooled layperson is not necessary to trigger an insurer's duty to defend when the insurer has actual notice of the suit. We reverse and remand.

On December 31, 1991, Federated issued an insurance policy to Whitney Volkswagen, Inc. (Whitney), a car dealer. The policy covered a fleet of automobiles that Whitney allowed its service customers to use while their own vehicles were being repaired. On October 30, 1992, Scott Mulvanny, then a Whitney employee, borrowed an automobile owned by Whitney to use for the weekend. Whether Mulvanny had Whitney's permission to take the automobile remains an unresolved question of fact. Mulvanny drove his friends, Kathleen Gallagher, Steven Smith, Scott Dillingham, and Ray Szylko, to a Halloween party in the Lincoln Park area of Chicago. Following the party, Gallagher drove the group back to the suburbs. During the return drive, the automobile operated by Gallagher struck the back of a stopped vehicle. All the passengers of the vehicle driven by Gallagher suffered injuries as a result of the accident.

On November 15, 1993, Smith, Mulvanny, Dillingham, and Szylko filed suit against Gallagher (Steven Smith, Scott Mulvanny, Scott Dillingham and Raymond Szylko v. Kathleen Gallagher, No. 93—L—02284 (Cir. Ct. Du Page Co.)), alleging that she negligently operated the vehicle owned by Whitney. After being served with the summons and complaint on November 22, 1993, Gallagher contacted State Farm, her automobile liability carrier. On December 14, 1993, State Farm sent Federated a letter notifying it of the suit and stating that Federated was the primary liability carrier for Gallagher in the suit,

while State Farm would provide excess coverage. In the letter, State Farm also asserted that it was tendering the defense of the suit to Federated. A copy of the summons and complaint served on Gallagher was evidently enclosed with the letter.

Federated filed a declaratory judgment action on March 3, 1994. In its complaint for declaratory relief, Federated alleged that Whitney did not give permission for Mulvanny to use the automobile involved in the accident and, therefore, that Gallagher was not an insured under the Federated policy. Thus, Federated contended that it had no duty to defend Gallagher for the claims made against her in cause No. 93—L—02284 or to indemnify her for any settlement or judgment against her. In addition, Federated asserted that it had no duty to defend Gallagher because she did not tender defense of the lawsuit to Federated.

Federated filed a motion for summary judgment on March 30, 1995. In the motion, Federated only alleged that it did not owe a duty to defend or indemnify Gallagher because she failed to tender her defense to Federated. In their answer to the complaint, Gallagher and State Farm admitted that she did not tender Federated her defense. In its reply brief on the motion for summary judgment, Federated admitted that it possessed knowledge of the underlying lawsuit. On June 19, 1995, the trial court granted Federated's motion for summary judgment and ruled that Federated had no duty to indemnify or defend Gallagher in cause No. 93—L—02284. This appeal ensued.

State Farm does not deny that Gallagher tendered the defense of the lawsuit to it and that she was insured under the State Farm policy. State Farm also acknowledged that Gallagher did not tender the defense of the lawsuit to Federated. Rather, State Farm argues on appeal that the trial court improperly granted summary judgment because Federated's receiving actual notice of the suit was sufficient to trigger Federated's duty to defend Gallagher.

■ Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). In adjudicating a summary judgment motion, a "court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party." *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 30 (1995). Summary judgment is a drastic means of resolving litigation and should be allowed only when the moving party's right to judgment is clear and free from doubt. *Guerino*, 273 Ill. App. 3d at 30. We conduct a *de novo* review of an order granting summary judgment. *Espinoza v. Elgin, Joliet, & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

In support of its argument that actual notice triggers an insurer's duty to defend, State Farm relies on *Long v. Great Central Insurance Co.*, 190 Ill. App. 3d 159 (1989). In *Long*, the insured, Jess Long, was served with a complaint and summons in a dramshop action. Long delivered the complaint and summons to the agency from which he purchased the dramshop policy, instead of to his insurer, Great Central. No appearance was filed on behalf of Long, and a default judgment was entered against him. Long subsequently sued Great Central and the agency that sold him the policy. In count IV of his complaint, Long requested damages for failure to defend the suit because Great Central either was aware of the suit or possessed information that should have disclosed to it that the suit had been filed. The circuit court dismissed count IV of the complaint.

On appeal, Long asserted that Great Central's receiving actual notice of the suit was sufficient to create a duty to defend the lawsuit. In turn, Great Central argued that, in the absence of a tender of the defense of the claim, it had no duty to defend the action. In reversing the dismissal of count IV of Long's complaint, the court recognized that an insured's failure to forward process to his insurer does not preclude recovery on the policy when the insurer has actual notice of the lawsuit. *Long*, 190 Ill. App. 3d at 168. The court defined actual notice as notice sufficient to permit the insurer to locate and defend the suit. *Long*, 190 Ill. App. 3d at 168. The court then concluded that Long properly alleged facts providing a basis for holding that Great Central had actual notice of the suit. *Long*, 190 Ill. App. 3d at 168-69.

The court in *Long* distinguished the facts in its case from the situation in *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.*, 776 F.2d 1380 (7th Cir. 1985). Nevertheless, the court accepted the *Hartford* court's ruling as an accurate statement of Illinois law. See *Long*, 190 Ill. App. 3d at 169-70. *Hartford* involved the issue of whether the insured, a large municipality, had properly tendered the defense of a lawsuit to its insurer. The *Hartford* court concluded that the municipality had not properly tendered the defense of the action and, hence, that the insurer had no duty to defend the suit. The court in *Long* quoted the following passage from *Hartford*:

> " 'Here the insured is a large and sophisticated governmental entity that is advised and assisted by its own counsel, who is a City official. While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than a letter from a rival insurance company 10 months after the process of litigation has begun.' " *Long*, 190 Ill. App. 3d at 169, quoting *Hartford*, 776 F.2d at 1383.

Thus, in reaching its ruling, the court in *Hartford* plainly emphasized the fact that the insured was a large, sophisticated entity.

The court in *Long* accepted the *Hartford* court's reasoning that an unschooled layperson is not obligated to actively tender the defense of a lawsuit to his insurer. See *Long*, 190 Ill. App. 3d at 169-70. The court concluded that Long was an unschooled layperson, not a sophisticated insured like the large municipality in *Hartford*. See *Long*, 190 Ill. App. 3d at 169-70. Accordingly, the court held that actual notice of the lawsuit was sufficient to require Great Central to defend the suit. See *Long*, 190 Ill. App. 3d at 168-70.

In contrast, Federated argues that under Illinois law an insured must tender the defense of a lawsuit to the insurer in order to trigger the insurer's duty to defend. In the absence of tender by Gallagher, Federated concludes that it has no duty to defend the suit. Federated asserts that the situation in the present case is analogous to the facts in *Hartford* and *Aetna Casualty & Surety Co. v. Chicago Insurance Co.*, 994 F.2d 1254 (7th Cir. 1993).

In *Hartford*, after concluding that the insured was a sophisticated entity, the court stated what was required of a sophisticated insured in order to trigger an insurer's duty to defend:

> "Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Hartford*, 776 F.2d at 1383.

Relying on the language quoted above, Federated concludes that the fact that it had knowledge of the lawsuit was insufficient to trigger its duty to defend.

In *Aetna*, a wrongful death action was brought against a pharmacy and three pharmacists. In addition to insurance policies with West American and Aetna, one of the pharmacists also held a professional liability insurance policy from Chicago Insurance (Chicago). Initially, West American undertook the defense of the lawsuit; however, Aetna later assumed control of the defense. The day before a settlement was reached in the case, Aetna asked Chicago to contribute its policy limits of $200,000 to the settlement. Chicago Insurance refused to contribute the entire amount, and Aetna subsequently filed a declaratory judgment action seeking partial reimbursement of the settlement. Although Chicago possessed knowledge of the claim against its insured, neither Aetna nor the pharmacist ever tendered the defense of the suit to Chicago. Further, Chicago's participation in the defense was never requested; it only was contacted by Aetna for a contribution to the settlement.

In deciding whether the pharmacist was required to tender the defense to Chicago in order to trigger the policy coverage, the court observed that the pharmacist was protected by three insurance policies covering various risks up to $1,300,000. *Aetna,* 994 F.2d at 1260. The court concluded that the pharmacist was neither a sophisticated insured nor an unschooled layperson as was the insured in *Long.* *Aetna,* 994 F.2d at 1260. Instead, the pharmacist fell somewhere in the middle of these two extremes. *Aetna,* 994 F.2d at 1260.

The court noted that counsel for the four insureds decided that a unified defense was the best strategy to protect the interests of the four defendants. *Aetna,* 994 F.2d at 1261. Hence, the pharmacist may have rationally concluded that representation by Aetna, the common insurer, better suited his defense than representation by Chicago. *Aetna,* 994 F.2d at 1261. It appears that one factor in the court's decision was the fact that the pharmacist, who was not an unsophisticated layperson, could have made a rational choice as to which insurance carrier should defend the claim. The court also recognized that Aetna was sophisticated and knowledgeable in its insurance defense decisions and that the pharmacist's defense was never tendered to Chicago. *Aetna,* 994 F.2d at 1261-62. The court held that, because neither the pharmacist nor Aetna acting on his behalf ever tendered his defense to Chicago, Chicago's policy coverage was never triggered and Chicago was not liable to pay any part of the settlement of the lawsuit. *Aetna,* 994 F.2d at 1262.

The facts in *Aetna* differ from the facts of this case in two important respects. First, we note that Federated has never asserted that Gallagher was other than an average layperson. In the present case, it appears that the insured was an unschooled layperson, not a pharmacist covered by three insurance policies—*i.e.,* a business person possessing a heightened knowledge of insurance matters—as was the case in *Aetna.* Second, in contrast to the situation in *Aetna,* where the insured knew that he was covered by three insurance policies, there is no evidence in the record to suggest that Gallagher knew Federated was the insurer of the vehicle she was driving on the night of the accident. Thus, it is unlikely that Gallagher knew that she may have been covered by the Federated policy. We cannot say that Gallagher chose between the State Farm and Federated policies because she was a layperson who apparently had no knowledge of the Federated policy.

Next, Federated argues that the distinction between sophisticated and unsophisticated insureds set forth in *Hartford* was merely *dicta* that did not accurately reflect Illinois law. In support of this proposition, Federated relies on *Hartford Accident & Indemnity Co.*

*v. Gulf Insurance Co.*, 837 F.2d 767 (7th Cir. 1988), the appellate decision following the remand of the initial *Hartford* case. In the second *Hartford* case, the court discussed the distinction between sophisticated and unsophisticated insureds made by the court in the initial *Hartford* case:

> "[The court's distinction] did not change well-settled Illinois law, as illustrated by the fact that no reported federal or state case has cited the panel's earlier opinion for that distinction. In any event, the panel's distinction is dicta[;] *** it suggests lowering the traditional standard [of tender] only for the unsophisticated ***."

*Hartford*, 837 F.2d at 774.

Federated's reliance on this language is simply misplaced. The second *Hartford* court's statement regarding published case law is no longer accurate. Both *Long* and *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70 (1992), recognize the distinction between sophisticated and unsophisticated insureds. In any event, we are not obligated to follow a federal court's interpretation of Illinois law.

Federated also cites *Forum Insurance Co. v. Ranger Insurance Co.*, 711 F. Supp. 909 (N.D. Ill. 1989), for the proposition that even an unsophisticated insured must make some type of tender to trigger the insurer's duty to defend. The language in *Forum* relied on by Federated simply quotes the language of the second *Hartford* case. See *Forum*, 711 F. Supp. at 912 n.4. In *Forum*, the court was not called upon to decide whether tender was required of an unsophisticated insured because the insured in that case was "a corporate entity with its own insurance agent." *Forum*, 711 F. Supp. at 912 n.4. Therefore, *Forum* did not set out the requirements for activating an insurer's duty to defend where the insured is an unschooled layperson.

Relying on *Institute of London Underwriters*, Federated argues that Gallagher had the right to choose which insurer would defend her. In *Institute of London Underwriters*, the insured, The Great Lakes Towing Company (Great Lakes), was covered by two insurers, Institute of London Underwriters (the Institute) and Hartford Fire Insurance Company (Hartford). Upon being sued, Great Lakes did not tender a defense of the lawsuit to Hartford or ask Hartford to provide indemnification. Rather, Great Lakes notified Hartford of the claim but told Hartford not to respond to the lawsuit. After concluding that it was not responsible for the accident from which the lawsuit arose, Great Lakes decided that the Institute, not Hartford, was the appropriate insurer to respond to the claim and provide a defense. See *Institute of London Underwriters*, 234 Ill. App. 3d at 78.

Hartford complied with Great Lakes' instructions and declined to contribute to a settlement as requested by the Institute. The Institute filed a declaratory judgment action, and the trial court granted summary judgment for Hartford.

The issue before the appellate court was as follows:

"[W]here two insurance policies potentially apply to a loss, may an insured elect which of its insurers is to defend and indemnify the claim by tendering its defense to one insurer and not the other and thereby foreclose the settling insurer from obtaining contribution from the nonsettling insurer?" *Institute of London Underwriters*, 234 Ill. App. 3d at 73.

The court found the facts in its case to be similar to those in the first *Hartford* case. Great Lakes was a sophisticated insured that did not tender the defense of the suit to Hartford. The court cited with approval the rule of law recognized in *Hartford* that "Illinois law requires a tender of defense by a sophisticated insured to an insurer before the insurer is required to defend or indemnify a claim." *Institute of London Underwriters*, 234 Ill. App. 3d at 76. The court noted that the only request for Hartford's participation came 14 months after the filing of the underlying suit and then concluded that the insured's refusal to tender defense of the action to Hartford excused Hartford's duty to perform under the policy or to contribute to the settlement. *Institute of London Underwriters*, 234 Ill. App. 3d at 76. The court distinguished *Long* as a case involving "an unschooled [layperson] who was not required to make an active tender." See *Institute of London Underwriters*, 234 Ill. App. 3d at 76-77.

Unlike Great Lakes in *Institute of London Underwriters*, Gallagher was an unschooled layperson, not a sophisticated corporation. In addition, the facts of this case do not indicate that Gallagher made a choice between State Farm and Federated. There is no evidence in the record indicating that Gallagher knew she might be insured under the Federated policy. The record does not indicate that Gallagher investigated the matter, concluded that she also might be insured by Federated, and then made the decision to choose State Farm to defend her instead of Federated. Upon being sued, Gallagher did what any layperson would do; she turned the matter over to her insurance carrier, State Farm. In contrast to *Institute of London Underwriters*, where a sophisticated insured was allowed to choose which of two known insurers would defend the suit by tendering the defense to one of the insurers, the insured in this case was a layperson who likely was unaware that there may have been coverage under two policies.

■ Moreover, we believe that under the present facts, even if Gal-

lagher were a sophisticated insured, Federated would still be obligated to provide a defense. Therefore, we reject the absolute distinction between sophisticated and unsophisticated insureds. The rationale often given for this distinction is that unsophisticated insureds must be safeguarded by placing the burden of communicating between the parties on the insurer, who is in the better position, because of its experience, competence, and resources to conduct the task. See, *e.g., Towne Realty, Inc. v. Zurich Insurance Co.*, 193 Wis. 2d 544, 558, 534 N.W.2d 886, 892 (1995), *pet. for review granted*, 194 Wis. CXXVII, 537 N.W.2d 570 (1995); *White Mountain Construction Co. v. Transamerica Insurance Co.*, 137 N.H. 478, 480, 631 A.2d 907, 910 (1993). The implication of this rationale is that sophisticated insureds possess the experience, competence, and resources needed to formulate strategy and communicate with their insurers; hence, sophisticated insureds deserve less protection should they fail to provide a written tender. This implication bears closer examination.

Attributing expertise to the sophisticated insured and on this basis requiring a written tender is merely a description of a court's preference between two sophisticated parties; it is not a rationale for that preference. An insurer is also a sophisticated party. If it has actual notice a lawsuit has been filed against one of its insureds, the insurer understands its insured will require a defense. Furthermore, based on its experience, the insurer should assume its insured will desire the insurer provide such defense. Both parties are assumed to understand the ramifications of a lawsuit. Why then should the insurer receive the benefit of a rule requiring written tender on the basis that the insured is also sophisticated? Such a rule requires an insured to jump through meaningless hoops towards an absurd end: telling the insurer something it already knows. Such a rule injects a degree of gamesmanship into the insurer-insured relationship without providing any valid corresponding benefit. In fact, the only benefit of such rule is to create a possibility—where none would otherwise exist—for an insurer to escape an obligation it otherwise owes its insured.

■ In rejecting a written tender rule for both sophisticated and unsophisticated insureds, we are mindful that Illinois insurance law traditionally favors the insured in determining whether the insurer must provide a defense. In making this determination, Illinois courts must liberally construe both the insurance policy and the underlying complaint in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991). The strength and extent of the requirement of liberal construction manifest themselves in a number of rules used to determine policy coverage. If

the underlying complaint merely alleges facts *"potentially"* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." (Emphasis in original.) *Wilkin*, 144 Ill. 2d at 73, citing *Thornton v. Paul*, 74 Ill. 2d 132, 144 (1978). An insurer may only refuse to defend if "it is *clear* from the face of the underlying [complaint] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *Wilkin*, 144 Ill. 2d at 73, citing *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 393 (1982). If a complaint alleges several theories of recovery, the insurer must defend even if only one of the theories is within policy coverage. *Wilkin*, 144 Ill. 2d at 73, citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194 (1976). Finally, "[a]ll doubts and ambiguities must be resolved in favor of the insured." *Wilkin*, 144 Ill. 2d at 74. These rules underscore the breadth and vitality of the obligation to construe liberally the complaint in the insured's favor in determining whether the insurer must provide a defense. As such, they support our rejection of a rule distinguishing between sophisticated and unsophisticated insureds for purposes of determining when a written tender is required to trigger the insurer's duty to defend.

■ We decline to recognize the distinction between sophisticated and unsophisticated insureds. *Contra Institute of London Underwriters*, 234 Ill. App. 3d at 76; see generally *Long*, 190 Ill. App. 3d 159 (acknowledging such a distinction). Unlike the court in *Institute of London Underwriters*, we conclude that—despite any special experience, competence, or resources the insured may possess—actual notice of a claim against the insured may be sufficient to trigger the insurer's duty to defend. Although we reject the distinction recognized by *Institute of London Underwriters* and *Long*, we agree actual notice means notice sufficient to permit the insurer to locate and defend the lawsuit. *Long*, 190 Ill. App. 3d at 168. For the foregoing reasons, we hold that an insurer's duty to defend claims potentially falling within the terms of a policy is triggered by actual notice of a lawsuit, regardless of whether the insured is sophisticated or unsophisticated— provided the insured has not selected one insurer to provide an exclusive defense and there is no prejudice to the insurer.

Our holding effectuates sound public policy. First, the State seeks to encourage insurers to fulfill the obligations required by their insurance policies (*Aetna*, 994 F.2d at 1260) and our holding furthers this result. In other words, requiring only actual notice to initiate the duty to defend will dissuade an insurer from defaulting on its duty to defend (*White Mountain Construction*, 137 N.H. at 480-81, 631 A.2d at 910) and will help ensure that an insured is adequately

represented in litigation (*Hartford*, 776 F.2d at 1382). Our holding also ensures that the insured receives the benefit of its bargain. When a premium is paid for an insurance policy, the insured generally wants the benefit of the policy and so desires the insurer to defend a claim under the terms of the policy. *Towne Realty*, 193 Wis. 2d at 558, 534 N.W.2d at 892. Along these lines, our holding avoids the unseemly result of insureds dutifully paying premiums for insurance protection—which, for many, will never provide any tangible benefit—only to be denied a defense because they did not comply with a technicality that provides absolutely no benefit to the insurer, other than a loophole through which the insurer may escape a lawful contractual obligation.

■ In the present case, Federated received actual notice of the suit from State Farm within one month of the filing of the complaint. Additionally, there is no evidence Federated's defense of Gallagher will cause the insurer prejudice. Finally, there is no evidence Gallagher affirmatively chose State Farm to provide her exclusive defense. Federated's notice of cause No. 93—L—02284, therefore, was sufficient to trigger its duty to defend the action. The order granting summary judgment for Federated is reversed, and the cause is remanded.

We reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings.

Reversed and remanded.

McLAREN, P.J., and GEIGER, J., concur.