INSTITUTE OF LONDON UNDERWRITERS, Plaintiff-Appellant, v. HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—90—3510

Opinion filed August 28, 1992.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin, and Nancy Shaw, of counsel), for appellant.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Jeanne M. Zeiger, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

A declaratory judgment action was filed by plaintiff Institute of London Underwriters (the Institute) against defendant Hartford Fire Insurance Company (Hartford), seeking a judicial declaration that Hartford was obligated to pay a 50% share of an accident settlement procured by the Institute involving a claim against The Great Lakes Towing Company (Great Lakes) within the coverage of each insurance company's policy. The trial court denied the Institute's request for relief and granted summary judgment to Hartford on the issue of Hartford's obligation to contribute to the settlement and this appeal ensued.

The undisputed facts disclose that Hartford provided comprehensive liability insurance to Great Lakes. Great Lakes employed Thatcher Engineering Corporation (Thatcher) to perform repairs on a damaged dockwall on Great Lakes' premises. The agreement between Thatcher and Great Lakes required Thatcher to have Great Lakes named as an additional insured on Thatcher's liability insurance policy for personal injuries or death arising out of this construction project. Accordingly, Thatcher caused its liability insurer, the Institute, to issue a certificate of insurance naming Great Lakes as an additional insured on Thatcher's insurance policy with respect to the project. Hartford's policy contained an "other insurance" clause which required Hartford to contribute equally to any loss covered by another primary insurer, but the Institute's policy contained no such clause.

In August 1987, Gail Garcia, individually and as personal representative and administrator of the estate of Richard Allen Garcia, deceased, filed an action against Great Lakes in the United States

District Court for the Northern District of Illinois, Eastern Division. This action alleged that on August 12, 1987, Richard Allen Garcia, while employed by Thatcher on the project for Great Lakes, sustained injuries resulting in his death.

Great Lakes tendered the defense of this action to Thatcher requesting Thatcher to provide Great Lakes with assurances that any liability of Great Lakes would be covered by Thatcher's underwriter. Great Lakes also notified Hartford of the Garcia action.

On September 2, 1987, the Garcia action was dismissed without prejudice and Great Lakes' president informed Hartford of this by letter dated October 7, 1987. In that letter Great Lakes' president noted that the litigation could be recommenced, that Great Lakes had no involvement in the accident and indicated that the Institute had the primary duty to defend Great Lakes in any subsequent litigation.

On February 17, 1988, Great Lakes received a letter from attorney C. Roy Peterson (Peterson) advising Great Lakes that a new action had been filed in the United States District Court for the Northern District of Illinois with respect to the death of Richard Allen Garcia. It advised Great Lakes that Peterson would file an answer denying liability pursuant to the Institute policy. Peterson further advised Great Lakes that since the damage claim of $10 million exceeded the primary and excess coverage limits of the Institute policy, Great Lakes should notify its excess carrier of the suit.

Because of Peterson's advice, Great Lakes notified Hartford by letter dated February 19, 1988, of the new action, enclosed a copy of the pleading and advised Hartford that the matter had been forwarded to Peterson who was representing Great Lakes under the agreement with Thatcher.

On or about January 13, 1989, Janice Nowacki, an employee of Hartford, called Peterson, the attorney hired by the Institute to represent Great Lakes in the Garcia case. Nowacki advised Peterson that Hartford also insured Great Lakes, had opened a file on the Garcia case and wanted to know its status. It is undisputed that Great Lakes never requested Hartford to defend or indemnify it with respect to the Garcia action.

On February 19, 1989, the United States District Court approved a $75,000 settlement of the Garcia case and the case was dismissed with prejudice. By letters dated March 3, 1989, March 29, 1989, and April 10, 1989, Peterson wrote to Hartford requesting it to contribute half of the settlement. Great Lakes did not ask, in-

struct or authorize Peterson to send these letters on Great Lakes' behalf. The record reflects that Joel Koslen, the vice-president of Great Lakes, in a telephone conversation with Peterson told him Hartford should not contribute to the settlement. In addition, in April 1988, Koslen told Janice Nowacki, the adjuster for Hartford, in a telephone conversation regarding settlement of the Garcia action, that it did not want the Hartford policy to respond to the Garcia accident, but rather that Thatcher and its insurers should pay the indemnification and defense costs for this matter. When Hartford followed these instructions and declined to contribute, this litigation resulted.

The issue presented for review is as follows: where two insurance policies potentially apply to a loss, may an insured elect which of its insurers is to defend and indemnify the claim by tendering its defense to one insurer and not the other and thereby foreclose the settling insurer from obtaining contribution from the nonsettling insurer? The trial court found that it could. This is a question of first impression. For the following reasons, we affirm.

█ The Institute in requesting Hartford to contribute half of the cost of settling the Garcia claim argues that the doctrine of equitable contribution permits one who has paid the entire loss to be reimbursed from other insurers who are also liable for the loss. (*Pekin Insurance Co. v. Cincinnati Insurance Co.* (1987), 157 Ill. App. 3d 404, 406, 510 N.E.2d 524, 526; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 197, 494 N.E.2d 634, 648; *Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 1005, 403 N.E.2d 680, 682.) This rule is applied in cases where one insurer has paid a debt equally owed by other insurers. *Royal Globe*, 82 Ill. App. 3d at 1005, 403 N.E.2d at 682.

However, Hartford contends that equitable contribution does not apply to this case because it is not equally liable for the loss as the Garcia claim was never tendered to it nor was it ever requested by its insured, Great Lakes, to defend or indemnify the claim.

█ An insurer's obligations under an insurance contract are ordinarily triggered when the insured or someone's action on the insured's behalf tenders the defense of an action potentially within the policy coverage. International Insurance Co. v. Indiana Insurance Co. (N.D. Ill. 1990), No. 87—C—4896 (*International*); *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.* (7th Cir. 1985), 776 F.2d 1380; *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178, 1183.

In the case at bar the insured, Great Lakes, did not tender a defense of the Garcia claim to Hartford or ask Hartford to provide indemnification for it. Instead, Great Lakes notified Hartford of the claim but unequivocally stated that Hartford should not respond to the loss, but that the Institute was to provide the defense and indemnification for it under the Thatcher policy.

We recognize that the Garcia claim came within the coverage of both the Institute and the Hartford policies and that the Institute settled the case and paid the loss. However, it is our view that the meager case authority in existence relevant to the issue presented by the factual scenario at bar supports Hartford's contention that the doctrine of equitable contribution does not apply.

The only court of review to consider a fact situation similar to that of this case is *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.* (7th Cir. 1985), 776 F.2d 1380. In that case the City of Peoria carried liability insurance with Hartford and was also named as an additional insured on the Peoria Park District's policy with Gulf. An accident occurred potentially within the coverage of both policies. The city did not tender the claim to Gulf but, rather, tendered the claim to Hartford, its own primary carrier. However, Gulf had received notice of the claim from the park district within a month after the lawsuit involving the claim was filed. Ten months later Hartford's attorney wrote Gulf's attorney a letter asking Gulf to assume the city's defense. Gulf refused. Hartford settled the claim on behalf of the city and then sued Gulf for Hartford's costs and expenses, including attorney fees, on the ground that Gulf was estopped to assert policy defenses to coverage for its wrongful refusal to defend a claim tendered to it on behalf of the city that was potentially within Gulf's policy coverage. The trial court found in favor of Hartford, but that decision was reversed on appeal.

■ The United States Court of Appeals for the Seventh Circuit found that tender of the defense was required to trigger Gulf's liability to defend the claim and was not satisfied merely because Gulf was aware of the suit from the outset, stating:

"While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than a letter from a rival insurance company 10 months after the process of litigation has begun.

*** Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that

the suit is potentially within the policy's coverage *coupled with knowledge that the insurer's assistance is desired. [Citation.] An insurance company is not required to intermeddle officiously where its services have not been requested.*" (Emphasis added.) (*Hartford Accident,* 776 F.2d at 1383.)

As stated in *Hartford Accident,* the fact that Hartford in the present case knew about the Garcia claim from the outset does not constitute a tender of the claim. Great Lakes never sought Hartford's assistance regarding the claim, and when an adjustor from Hartford discussed settlement of the claim with Great Lakes' vice-president, he told the adjuster that Great Lakes did not want the Hartford policy to respond to this action. To ignore its insured's request would have required Hartford to become an "intermeddler in the contests of others." *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 253, 194 N.E.2d 489, 499.

In *Hartford v. Gulf,* the court found the tender of the claim by Hartford to Gulf insufficient because no official of the insured had ever requested a defense from Gulf. Instead, an attorney for coinsurer Hartford tendered the defense to Gulf 10 months after the litigation began. Similarly, in the case before us, the tender letters written by Peterson contained no indication that the attorney was acting at the request of the insured or carrying out the wishes of the insured. As the court observed in *Hartford Accident,* Hartford's authority to represent the insured in the underlying action was "not necessarily the authority to transfer the lawsuit to another insurance company and another attorney." (*Hartford Accident,* 776 F.2d at 1383 n.3.) In this case, no official of Great Lakes ever asked Hartford to defend or indemnify on behalf of Great Lakes. Rather, Hartford was instructed by its insured not to do so. In fact, the request for indemnification came from an attorney defending Great Lakes under the Institute's policy. The Institute concedes that Great Lakes did not ask Peterson to send the tender letters. Following the reasoning set forth in *Hartford Accident,* the request for contribution by an attorney for the Institute, a rival insurance company, 14 months after the Garcia litigation had commenced is not sufficient to trigger Hartford's obligation to contribute where Hartford's insured never asked it to defend or indemnify. Even in a subsequent appeal of *Hartford Accident,* the seventh circuit noted that its previous decision had found "as a matter of Illinois law" that the underlying complaint set forth allegations that brought the claim within the risks covered by the coinsurers' (Gulf's) policy. (*Hartford Accident & Indemnity Co. v. Gulf Insurance Co.* (7th Cir.

1988), 837 F.2d 767, 775.) Nonetheless, it again remanded that case, stating: "the trial shall be limited to the issue of whether the City gave Gulf an opportunity to defend, and in particular whether the City adequately tendered its defense to Gulf." *Hartford Accident*, 837 F.2d at 775.

The reasoning set forth in *Hartford Accident* was followed in the unpublished opinion of a Federal district court sitting in Illinois in International Insurance Co. v. Indiana Insurance Co. (N.D. Ill. 1990), No. 87—C—4896. The court ruled that although an insurer normally would have had a duty to contribute to a settlement, its duty was excused by the insured's failure to tender its defense. It stated:

"The only requests for Indiana's participation came from International [Insurance Co.] rather than from the Board [the insured], and the first request came over three years after the suit was filed. Moreover, when it was finally contacted, Indiana was only asked to contribute to a settlement rather than to defend the suit *** because no adequate tender of the defense of the Scott suit was made to Indiana, Indiana did not breach any duty to defend this litigation."

Therefore, Indiana was not estopped from asserting defenses to coverage.

In the case before us the only request for Hartford's participation came from the Institute, not the insured, 14 months after the Garcia lawsuit was filed. As was the case in *International*, Hartford was asked only to contribute to a settlement, not defend the suit. Therefore, in this case, as in *International*, the insured's refusal or failure to tender the defense of the action to Hartford excused Hartford's duty to perform under its policy or to contribute to a settlement procured by a coinsurer.

Although there is no case law from Illinois State courts addressing the issue raised in this case, our research discloses no authority to indicate that *Hartford Accident, Solo Cup* and *International* are incorrect in the assertion that Illinois law requires a tender of defense by a sophisticated insured to an insurer before the insurer is required to defend or indemnify a claim.

In *Long v. Great Central Insurance Co.* (1989), 190 Ill. App. 3d 159, 546 N.E.2d 739, an Illinois reviewing court considered an argument based upon *Hartford Accident* that an insured had not properly tendered its defense to the insurer. The court accepted the ruling in *Hartford Accident* as an accurate statement of Illinois law, but observed that the record disclosed that Long, the insured,

was an unschooled layman who was not required to make an active tender to the insured.

In *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150, the Illinois Supreme Court ruled that a defending insurer which had exhausted its policy limits was no longer obligated to defend the insured and in that event the insured must tender the case to another carrier. Although the adequacy of tender was not at issue in *Zurich,* the clear import of this language is that a sophisticated insured must tender a defense of claim to an insurer before the insurer is obliged to perform its obligations under the policy.

The Institute's argument that the "other insurance" clause of Hartford's policy requires Hartford to contribute to the settlement suffers from the same infirmity as its argument for application of the equitable contribution doctrine, in that any liabilities arising under this clause are not triggered until the insurer becomes obligated to pay or defend.

In *Zurich,* the appellate court stated:

> "Only when a policy is triggered and the insurer becomes obligated to pay 'all sums' and to defend 'any suit' does the 'other insurance' clause come into play to allow liability to be apportioned among the insurers." (*Zurich,* 145 Ill. App. 3d at 200.)

Therefore, if the policy is never triggered, the issue of liability under the "other insurance" clause does not arise. Furthermore, to allow the Institute to claim benefits under the "other insurance" clause of Hartford's policy would be to elevate its status to that of a third-party beneficiary of Hartford's contract with the insured. (See discussion later in this opinion.)

Although the issue of contribution between the various insurers was not before the reviewing court in *Zurich* due to a reservation of this ruling by the trial court, the reviewing court made the above-quoted observation and further noted that the "other insurance" provisions have no bearing on the question of the insurer's duty to provide a defense and indemnification to the insured. (*Zurich,* 145 Ill. App. 3d at 200.) The Illinois Supreme Court affirmed, accepting the proposition that between the insurer and the insured, "each carrier whose policy *is triggered* is jointly and severally liable for the total indemnity and defense costs of a claim [up to the policy limits] without proration." (Emphasis added.) *Zurich,* 118 Ill. 2d at 56.

The Institute relies on *Radovanov v. Land Title Co. of America, Inc.* (1989), 189 Ill. App. 3d 433, 545 N.E.2d 351, to support its argument that this court should liberally construe an insurance contract so as not to deprive an insured of coverage for which he has paid. However, in *Radovanov*, the insured was suing for coverage. In this case Great Lakes told the Institute and Hartford that Hartford should not contribute to the settlement and still contends that its Hartford policy should not respond to the Garcia settlement.

Moreover, the rights of third-party claimants are not involved in this case. The debt to the third-party claimant has already been satisfied and is prerequisite to the right of bringing an action for equitable contribution. *Providence Washington Insurance Co. v. American Bridge Division of United States Steel Corp.* (1990), 200 Ill. App. 3d 597, 558 N.E.2d 396.

The Institute argues that the doctrine of equitable contribution has nothing to do with the wishes of the insured. That statement may be correct in abstract principle. However, the insured's actions after a loss may foreclose his right to coverage under a policy and, thus, defeat a claim for equitable contribution by another insurance carrier. See *Del Grosso v. Casualty Insurance Co.* (1988), 170 Ill. App. 3d 1098, 524 N.E.2d 1042 (failure of a corporate insured to give notice of an action to his insurer was a defense to coverage under that policy, and, accordingly, a coinsurer which had settled the underlying action could not obtain reimbursement from the other carrier). International Insurance Co. v. Indiana Insurance Co. (N.D. Ill. 1990), No. 87—C—4896; *Hartford Accident & Indemnity Co. v. Gulf Insurance Co.* (7th Cir. 1985), 776 F.2d 1380.

The doctrine of equitable contribution, although it does not arise by way of subrogation, is closely related to the rights of the insured under the policy because there can be no contribution where a loss is not equally owed by both insurers. See *Del Grosso*, 170 Ill. App. 3d 1098, 524 N.E.2d 1042; *Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 403 N.E.2d 680.

On the facts of this case it cannot be said that the insured's actions were arbitrary, whimsical or vindictive. Great Lakes had bargained with Thatcher to be an additional insured in its liability policy for the construction project Thatcher was to perform on Great Lakes' premises. Great Lakes did not tender its defense to Hartford because it concluded it was not responsible for the accident resulting in the death of Thatcher's employee, Garcia, and that Thatcher's insurer, the Institute, was the appropriate carrier to respond to the Garcia claim. Great Lakes may well have feared that if

the loss were attributed to its policy with Hartford the result might be a rise in premiums or cancellation of its policy. This factor alone suggests the insured ought to have the right to seek or not to seek an insurer's participation in a claim as the insured chooses when more than one carrier's policy covers the loss.

If the doctrine of equitable contribution is applied to the facts of this case to allow the Institute to recover from Hartford for a claim never tendered by the insured and in which the insured has directed it not to participate, the insurance policy becomes, in effect, a third-party beneficiary contract entered into by the insured for the direct benefit of other carriers. This result is not what Great Lakes intended in purchasing coverage from Hartford. Great Lakes has taken the position that the loss should not be attributed to the Hartford policy. Moreover, there is nothing in the Hartford policy that shows it was made for the direct benefit of other insurance carriers. (See *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1016, 377 N.E.2d 161, 169 (for a person to claim as a third-party beneficiary, the contract must clearly show it was made for his direct benefit).) The Institute cites the case of *Zurich-American Insurance Cos. v. Atlantic Mutual Insurance Cos.* (1988), 139 A.D.2d 379, 531 N.Y.S.2d 911, in support of its argument that the doctrine of equitable contribution arises when one carrier pays a loss covered by another carrier's policy regardless of whether or not the insured has tendered the defense to the other carrier. In *Zurich-American*, the defendant Atlantic Insurance Company did not raise the issue of the insured's failure to tender the defense. Nor was it a case in which an insured elected which of two applicable policies should cover the loss. The insureds denied facts in their answer to the underlying action which would have brought them within the coverage of the coinsurer's policy. Further, *Zurich-American* involved only the question of whether a coinsurer was obligated to defend an underlying action. Therefore, it was not an equitable contribution action as permitted under Illinois law because the latter requires an insurer to pay the settlement or judgment of the underlying action before seeking equitable contribution for defense costs from a coinsurer. *Providence Washington Insurance Co. v. American Bridge Division of United States Steel Corp.* (1990), 200 Ill. App. 3d 597, 558 N.E.2d 306.

The majority of the court in *Zurich-American* did make the following statement:

> "The dissent places great reliance on the absence of a request by Bents and Lorenz of Atlantic for a defense. This ar-

gument \*\*\* is irrelevant. \*\*\* [N]o such request is required to trigger Zurich's rights to reimbursement of Atlantic's share of the defense costs." *Zurich-American,* 139 A.D.2d at 387, 531 N.Y.S.2d at 916.

If this represents an accurate statement of New York law on the issue of tender, under Illinois law, as previously stated, a sophisticated insured must tender the claim to the insurer before that insurer must perform its obligations under the contract. See *International,* No. 87—C—4896; *Solo Cup,* 619 F.2d 1178; *Hartford Accident,* 776 F.2d 1380; *Long,* 190 Ill. App. 3d 159, 546 N.E.2d 739; *Zurich,* 118 Ill. 2d 23, 514 N.E.2d 150.

The Institute finally argues that to allow an insured to elect which insurer is to respond to a claim by tendering a defense to one and not the other will penalize responsible insurers who honor their obligation to defend and settle claims. However, in this case, Hartford has not defaulted on any obligation to its insured. The insured never tendered defense of the Garcia claim to Hartford. When the Institute asked for contribution from Hartford, Hartford contacted the insured, Great Lakes, to ascertain its wishes. The insured told Hartford not to contribute to the settlement as the settlement should be paid by the Institute. The contract between Hartford and Great Lakes does not require Hartford to reimburse the Institute against the wishes of its insured.

Finally, we do not believe that our holding in favor of Hartford will punish a responsible insurer or discourage insurers to settle claims until all coinsurers first agree to pay their *pro rata* share. The law already places a duty on an insurer to accept a defense and expeditiously handle a properly tendered claim which is covered. Contribution is a creature of equity. Under the circumstances of this case, it would be inequitable to require an insurer to reimburse another carrier for a claim it has no obligation to pay to its insured and in circumvention of the insured's wishes with whom it has the contract.

Affirmed.

MURRAY and GORDON, JJ., concur.