CONTINENTAL CASUALTY COMPANY, Plaintiff and Counterdefendant and Appellee and Cross-Appellant, v. SECURITY INSURANCE COMPANY OF HARTFORD, Defendant and Counterplaintiff and Appellant and Cross-Appellee.

First District (5th Division)    No. 1—95—0173

Opinion filed April 12, 1996.—Rehearing denied May 14, 1996.

John J. Blasi and James W. McConkey, both of Rooks, Pitts & Poust, of Chicago, for appellant.

Marsha K. Ross, Teresa Rooney Williams, and Elizabeth T. Jozefowicz, all of Haskell & Perrin, of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Continental Casualty Company (Continental) filed this action against Security Insurance Company of Hartford (Security) seeking a declaration that Continental is entitled to equitable contribution from Security for defending mutual insureds, Edward Durrell Stone & Associates (Durrell Stone), and Perkins & Will Corporation (Perkins & Will), in litigation arising out of the construction of the Standard Oil building in Chicago, Illinois. The trial court granted Continental's motion for summary judgment and declared that Security must reimburse Continental one-half of its costs of defending Durrell Stone and Perkins & Will. Security appeals this ruling.

Security filed a counterclaim against Continental seeking a declaration that it is entitled to equitable contribution from Continental for defending Edward Durrell Stone Associates, P.C. (the P.C. entity), in the Standard Oil building litigation. The trial court granted summary judgment against Continental and in favor of Security with respect to its counterclaim and ordered Continental to reimburse Security for one-half of its costs of defending the P.C. entity. Continental cross-appeals the trial court's ruling on this issue.

The appeal and cross-appeal were timely filed pursuant to Illinois Supreme Court Rules 301 and 303(a)(3), respectively. 155 Ill. 2d Rs. 301, 303(a)(3).

Continental issued an architects' and/or engineers' professional liability claims policy to Durrell Stone and Perkins & Will originally effective April 21, 1969, through April 21, 1972. Various endorsements extended coverage for the insureds' liability for claims made through March 31, 1987. This policy covered the insureds' legal liability arising out of professional services performed on behalf of the joint venture entered into by Durrell Stone and Perkins & Will involving the design and construction of the Standard Oil building.

Durrell Stone and Perkins & Will were named insureds in this policy, which further defined "insured" as follows:

"III Definition of Insured

The unqualified word 'insured' includes the named insured and also includes any partner, executive officer, director, stockholder or employee of the named insured while acting within the scope of his duties as such."

The policy did not name or define the P.C. entity as an insured.

The Continental policy provides primary professional liability coverage as follows:

"I Coverage

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insureds' capacity as an architect or an engineer and if such legal liability is caused by an error, omission or negligent act."

Security also issued primary professional liability claims made policies to Durrell Stone and Perkins & Will. The Security policy issued to Perkins & Will covered claims made between July 2, 1987, and July 2, 1988. The Security policy issued to Durrell Stone, which also named the P.C. entity as an insured, covered claims made between November 27, 1987, and November 27, 1988. Both Security policies provided professional liability coverage as follows:

"I Insuring Agreements
What We Insure
We will pay those sums in excess of the deductible that you become legally obligated to pay as damages because of 'claims' to which this insurance applies arising from the conduct of your professional practice."

On April 18, 1988, Amoco filed a complaint for architectural malpractice against Durrell Stone arising out of the construction of the Standard Oil building. About a month later, Amoco amended its complaint for professional malpractice to also name Perkins & Will as a defendant.

The amended complaint named Durrell Stone as defendant as a joint venturer with Perkins & Will and also named its partners individually. Based upon the potential for coverage created by the allegations of the Amoco complaint, Continental retained separate law firms to defend Durrell Stone and Perkins & Will, respectively. Security refused to pay any of the costs for defense of these two entities.

In April 1989, Continental filed an amended complaint and, in February 1990, filed count V, which requested the trial court to order Security to reimburse Continental one-half of its costs of defending Durrell Stone and Perkins & Will.

On July 25, 1992, Security filed a counterclaim against Continental requesting the trial court to find that Security is entitled to equitable contribution from Continental for the cost of defending the P.C. entity in the Amoco lawsuit. Continental had refused to undertake the defense of the P.C. entity because it was not a named insured under the Continental policy and Security had therefore assumed the defense of the P.C. entity in the Amoco lawsuit.

Security moved to dismiss Continental's amended complaint on

the ground that a lack of identity between the Continental and Security policies as to the parties and their insured risks precluded Continental from stating a claim for contribution. The trial judge denied Security's motion to dismiss. Security then moved for reconsideration and raised for the first time the argument that Continental's policy was primary and that if the court were to find Security was required to reimburse Continental for defense costs, its *pro rata* clause should be applied to reduce the amount of reimbursement below the one-half amount requested by Continental. This motion was denied in December 1991.

The litigation then progressed through several more hearings but the final result was a reaffirmation of the original ruling that there was overlapping coverage for Durrell Stone, the P.C. entity and Perkins & Will under the Continental and Security policies and that Continental was entitled to reimbursement of one-half of the defense costs incurred for Durrell Stone and Perkins & Will from Security, and Security was entitled to reimbursement of one-half of defense costs incurred for the P.C. entity in the Amoco litigation. We affirm the decision of the trial court.

Durrell Stone and Perkins & Will tendered the defense of the Amoco litigation to both Continental and Security. In response Continental assumed the defense of the insured. Security refused the tender.

■ This court in *Perkins & Will v. Security Insurance Co.*, 219 Ill. App. 3d 807, 579 N.E.2d 1122 (1991), has already determined that Security had a duty to indemnify Perkins & Will for the same underlying claims at issue in the case at bar. Security attempts to distinguish *Perkins & Will* from this case on the ground that it was limited to a consideration of indemnity issues. It is well established, however, that the duty to defend is broader than the duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073 (1993). Where there is a duty to indemnify, there is also a duty to defend and Security's attempt to distinguish *Perkins & Will* in that regard is without merit.

■ Security argues that equitable contribution is inapplicable because the Continental policy covers both parties to the joint venture while Security issued its policies individually to Perkins & Will and Durrell Stone a number of years after work on the Amoco building project was completed. Continental's entitlement to contribution from Security for defense costs must be evaluated in relation to the coverage sought from the specific claims at issue. See *Home Insurance Co. v. Certain Underwriters at Lloyd's London*, 729 F.2d 1132 (7th Cir. 1984) (applying Illinois law). The Amoco complaint put at is-

sue not only the professional liability of Perkins & Will and Durrell Stone as joint venturers on the Amoco project covered by Continental's policy but also the individual liability of Perkins & Will and Durrell Stone and their partners covered by the Security policies. Therefore, coverage overlapped, both policies covered the same insureds and Continental is entitled to equitable contribution from Security.

Security's policies specifically excluded vicarious liability arising out of the Amoco joint venture for the negligence of the other joint venturer. Perkins & Will and Durrell Stone, however, were sued individually, in addition to being sued as joint venturers, and the exclusions contained in both Security policies specifically state that the policies afford coverage for the named insureds for their individual liability arising out of the Standard Oil building construction project.

■ Security next contends that the risks covered by its policies are different from those covered by the Continental policy (1) because the policies had different policy periods; (2) the limits of liability and the deductibles in the policies are different; and (3) the scope of coverage is different under the policies.

At the time the trial court decided the issue of Continental's right to equitable contribution from Security for defense costs, no one disputed the fact that both the Continental policy and the Security policies were primary and, as such, provided coverage to the insureds on the same basis. The policy differences, therefore, set forth above on the facts of the case at bar, are unimportant. See, e.g., Home Insurance Co., 729 F.2d 1132 (equitable contribution allowed where both general liability and professional liability policies covered the loss at issue).

The fact that Security's policies provided coverage for all professional liability claims against the insureds during the term of the policy and Continental's policy provided coverage for professional liability claims against the insureds only with respect to the Standard Oil building project is of no moment in the case at bar when the liability at issue is a professional liability claim against the insureds arising from the construction of the Standard Oil building.

In a motion for reconsideration after the trial court had granted summary judgment in favor of Continental, Security argued for the first time that the Continental policy is primary and Security's policies are excess with respect to liability for defense costs. Security based the argument primarily on a letter dated October 30, 1989, from Perkins & Will's attorney to Continental's attorney which it claimed evidenced the fact that Continental's policy was primary and

Security's policy was excess. The trial court declined to entertain this argument as untimely, as the letter on which Security relied was clearly available before the trial court's 1994 hearing on Continental's motion for summary judgment. Motions for reconsideration are designed to bring to the court's attention newly discovered evidence that was unavailable at the time of the original hearing, changes in existing law, or errors in the court's application of the law. *Korogluyan v. Chicago Title & Trust Co.*, 213 Ill. App. 3d 622, 627, 572 N.E.2d 1154 (1991). This argument could and should have been raised at the hearing on the motion for summary judgment and the trial court was correct in declining to consider it when raised for the first time in a motion for reconsideration, and we, therefore, decline to consider it on review.

■ Finally, Security argues that it should not be required to contribute to the defense costs of Perkins & Will because Perkins & Will did not tender the defense to Security. In support of this contention, Security relies on *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992). In that case, however, this court refused to permit the Institute of London Underwriters (Institute) to obtain contribution from coinsurer Hartford because the policyholder did not tender its defense to Hartford. The "tender" to Hartford was made by an attorney for Institute. In *Institute*, the record revealed that the policyholder specifically instructed Hartford not to respond to the loss. Under those special circumstances, we determined that it would be inequitable to require an insurer to reimburse another carrier for a claim it has no obligation to pay to its insured and in circumvention of the wishes of the insured with whom it had the contract. *Institute*, 234 Ill. App. 3d at 80, 599 N.E.2d at 1317.

The facts of the case at bar bear no similarity to those in the *Institute* case. Perkins & Will tendered the defense in the Amoco litigation to Security on May 24, 1988, which was acknowledged by Security on June 23, 1988. The fact that Perkins & Will later advised Security that it would not at present need a defense from Security because Continental had assumed the defense of the Amoco lawsuit under its contractual obligations is of no significance *vis-a-vis* Continental's right to recover one-half of its defense expenses from Security.

Perkins & Will did more than tender its defense of the Amoco litigation to Security. It later filed its own declaratory judgment against Security with respect to the Amoco lawsuit on the issue of Security's duty to indemnify Perkins & Will which was resolved in Perkins & Will's favor. *Perkins & Will*, 219 Ill. App. 3d 807, 579 N.E.2d 1122. In that case, the reviewing court majority opinion noted:

"In letters dated May 24 and June 17, 1988, Perkins & Will called upon DPIC, as managing underwriter for Security, to defend and indemnify the firm. On June 23, DPIC, on behalf of Security, denied coverage and declined to defend and indemnify the firm." *Perkins & Will*, 219 Ill. App. 3d at 811, 579 N.E.2d at 1125.

The foregoing recitation amply demonstrates that *Institute* has no application to the case at bar. Perkins & Will tendered its defense to Security, the claim was potentially within the coverage of Security's policy, Security declined to defend or indemnify, Continental assumed the defense costs pursuant to its contractual obligations, and it is now entitled to reimbursement from Security for one-half its defense costs expended on behalf of Perkins & Will in the Amoco litigation. See *Home Insurance Co.*, 729 F.2d at 1135 (applying Illinois law and quoting *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London*, 34 Ill. 2d 424, 431, 216 N.E.2d 665 (1966)).

Security filed a counterclaim against Continental for reimbursement for half the defense costs of defending the P.C. entity in the Amoco litigation. Continental had declined to defend the P.C. entity in that litigation on the ground that the P.C. entity was not a named insured under its policy. The trial court entered summary judgment in favor of Security and against Continental, awarding one-half of Security's costs of defending the P.C. entity in the Amoco litigation on the ground that the P.C. entity was a successor to Durrell Stone, was named in the lawsuit and was, therefore, potentially within the coverage of Continental's policy giving rise to a duty to defend.

Continental responds that the P.C. entity is not a named insured under its policy, that successors to named insureds are not covered under the language of the policy, and thus no duty to defend was owed the P.C. entity under the Continental policy.

The record reveals that Edward Durrell Stone & Associates, a partnership, was established on January 1, 1966, and consisted of five members. This partnership entered into the joint venture agreement with Perkins & Will and was a coventurer in the agreement with Amoco to design and construct the Standard Oil building. The Durrell Stone & Associates partnership was a named defendant in the Amoco lawsuit as well as the five establishing partners individually. Another agreement executed at the formation of the partnership also named certain persons affiliated with the partnership as "special partners and associates." These included Joseph L. Scarin and Vincent Furno. These persons, along with Edward Durrell Stone, Sr., and William Bailey Smith, were the designees of the joint venture agreement and provided the majority of services for the project. These individuals were also named individually as defendants in the

Amoco litigation. Some time later, while Continental's policy was in force, Peter Capone joined the partnership. On July 15, 1974, Peter Capone withdrew as a partner of Edward Durrell Stone & Associates. According to the amended business certificate, the withdrawal of Mr. Capone left only Edward Durrell Stone, Sr., as a member of the firm, and therefore the partnership known as Edward Durrell Stone & Associates ceased to exist at that time, approximately nine months before substantial completion of the Amoco project.

By agreement dated July 8, 1974, the corporate entity known as Edward Durrell Stone & Associates, P.C., was formed. Edward Durrell Stone, Sr., the founding principal of Stone & Associates, was not affiliated with Stone, P.C. Of the former partners of Durrell Stone & Associates, only Peter Capone became a principal of Stone, P.C. The controlling principals of Stone, P.C., were Edward Durrell Stone, Jr., and Peter Capone.

Continental refused to defend the P.C. entity because it was not a named insured under its policy. The policy provides that the term "insured" "include[s] the named insured and also includes any partner, executive officer, director, stockholder or employee of the named insured while acting within the scope of his duties as such."

Security, in its counterclaim for contribution from Continental for its defense costs, contends that since the definition of "insured" under Continental's policy does not exclude any potential successors in interest to the named insured from coverage, the P.C. entity should be covered as a successor in interest to Durrell Stone & Associates, a named insured, and because the complaint alleged that the P.C. entity performed services on behalf of the joint venture.

■ Continental rejects this argument on the basis that its joint venture endorsement extends coverage only to "the insured's legal liability arising out of professional services performed by or on behalf of the joint venture." Because the P.C. entity is not a named insured under the Continental policy, whether or not it worked for the joint venture is immaterial to Continental's obligation to defend. We agree with Continental that the P.C. entity was not a named insured under its policy and that Continental's policy does not extend to successors of named insureds, but conclude for the following reasons that there was potential coverage under its policy for a partner of the P.C. entity entitling Security to contribution for defense costs.

The duty to defend is broader than the duty to indemnify. *Crum & Forster*, 156 Ill. 2d at 393-94. Continental correctly points out that the P.C. entity is not a named insured under its policy. However, Peter Capone, a partner in the P.C. entity, was also a partner in Durrell Stone during the time it performed services for the construction of

the Standard Oil building. As a partner in Durrell Stone, he was covered by the joint venture endorsement of Continental's policy and it is arguable that he would continue to be covered under the policy for work he had performed, if any, for the joint venture while he was a member of the P.C. entity. Thus the potential for coverage of the P.C. entity, at least to the extent of Capone's liability for professional malpractice in the Standard Oil building construction, under the Continental policy could exist. Therefore, the trial court could reasonably have concluded that even though the policy did not explicitly cover successors to the named insured, the common partner link between Durrell Stone and the P.C. entity created a potential for coverage under the Continental policy and, therefore, a duty to defend, thus entitling Security to equitable contribution from Continental for one-half of the defense costs for the P.C. entity in the Amoco litigation.

■ Finally, the issue of whether both the policies were primary or excess was not timely raised by the parties, and we decline to review the trial court's decision to treat both policies as primary in determining the proper apportionment of equitable contribution for defense costs due from the parties to each other. *Korogluyan*, 213 Ill. App. 3d at 627.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

COUSINS and HOURIHANE, JJ., concur.