# United States Court of Appeals
## For the First Circuit

No. 14-1991

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Plaintiff, Appellant,

v.

GREAT NORTHERN INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Aaron S. Bayer, with whom Michael P. Thompson, David R. Roth, and Wiggin and Dana LLP were on brief, for appellant.
Jennifer C. Sheehan, with whom Richard J. Shea and Hamel, Marcin, Dunn, Reardon & Shea, P.C. were on brief, for appellee.

May 29, 2015

**KAYATTA**, <u>Circuit Judge</u>.  The parties ask us to decide a question of Massachusetts law on which Massachusetts' highest court has not spoken.  The question arises when, as here, an insured buys two insurance policies that cover the same loss.  In such a case, may the insured opt to have one insurer cover the entire loss or, instead, may either insurer insist that both share equitably in covering the loss?  Given the competing considerations implicated by this question of state law and policy, and the lack of clear guidance that would allow us confidently to predict how Massachusetts' highest court would weigh these considerations, we certify the question to the Massachusetts Supreme Judicial Court ("SJC"), pursuant to SJC Rule 1:03.  <u>See, e.g.</u>, <u>Boston Gas Co.</u> v. <u>Century Indem. Co.</u>, 529 F.3d 8, 14–15 (1st Cir. 2008).

## I.  Background

The parties do not dispute any material facts.  In January 2010, an employee of Progression, Inc.[1] ("Progression"), suffered serious injury while on a business trip.  The employee pursued a workers' compensation claim before the Massachusetts Department of Industrial Accidents ("DIA").  Progression had two insurance policies that covered this work-related injury: one with

---

[1] Progression is a Delaware corporation headquartered in Massachusetts.

Insurance Company of the State of Pennsylvania[2] ("ISOP"), and one with Great Northern Insurance Company[3] ("Great Northern"). Progression tendered the claim to ISOP only. Progression did not notify Great Northern. ISOP immediately made payments pursuant to the policy and defended the claim before the DIA.[4]

ISOP later learned of Progression's policy with Great Northern. In October 2011, ISOP wrote Great Northern, notifying it of the claim against Progression and requesting contribution. In March 2012, Great Northern replied, informing ISOP that it had contacted Progression after receiving notice from ISOP, and learned that Progression purposefully tendered the claim to ISOP only.[5] Great Northern observed that ISOP was "legally obligated to handle [Progression's] claim," and that there was "no practical reason whatsoever for Great Northern to assume" handling the claim.

Invoking diversity jurisdiction, ISOP filed this suit and promptly moved for summary judgment declaring that the

---

[2] ISOP is domiciled in Pennsylvania, and its principal place of business is in New York.

[3] Great Northern is domiciled in Indiana, and its principal place of business is in New Jersey.

[4] As of January 2014, ISOP had paid over $2.5 million for the injured employee's claim under its policy with Progression. ISOP continues to make payments.

[5] Great Northern also learned that Progression did not authorize ISOP to tender the claim to Great Northern on its behalf.

Massachusetts doctrine of equitable contribution required Great Northern to pay half of the past and future defense costs and indemnity payments related to the claim. Cross-moving for summary judgment, Great Northern argued that it had no coverage obligation because Progression chose not to comply with its duty under the policy to notify Great Northern of the claim. ISOP responded that, under Massachusetts law, Progression's failure to notify Great Northern would only excuse Great Northern from its coverage obligation if the lack of notice caused prejudice. Neither party pointed to any "other insurance" clause in either policy that might bear on this dispute. See, e.g., Boston Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 308 n.36, 454 Mass. 337, 362 (2009).

The district court granted summary judgment to Great Northern, holding that Progression's decision to tender the claim to only ISOP defeated ISOP's later action for equitable contribution from Great Northern. Ins Co. of Pa. v. Great N. Ins. Co., 43 F. Supp. 3d 76, 82–83 (D. Mass. 2014). The district court noted that there was no Massachusetts law directly on point. Id. at 82. Citing law from Illinois and Washington, the district court applied a rule known as "selective tender."[6] Id. at 81–82. Under

---

[6] Selective tender is sometimes referred to as "targeted tender." See Workers' Compensation Fund v. Utah Bus. Ins. Co., 296 P.3d 734, 737 (Utah 2013).

that rule, when Progression opted not to give Great Northern any notice of the claim, even belatedly, it avoided obliging Great Northern to provide any coverage.  Id.  Therefore, no claim for equitable contribution was available.  Id.

## II.  Standard of Review

We consider de novo a district court's grant or denial of a motion for summary judgment.  Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 142 (1st Cir. 2014).  Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Cross-motions for summary judgment require us to evaluate each motion independently and determine whether either party deserves judgment as a matter of law on undisputed facts.  Matusevich v. Middlesex Mut. Assurance Co., 782 F.3d 56, 59 (1st Cir. 2015).  We sit in diversity jurisdiction over this dispute, see 28 U.S.C. § 1332, so the substantive law of Massachusetts governs.  First Am. Title Ins. Co. v. Lane Powell PC, 764 F.3d 114, 118 (1st Cir. 2014).

## III.  Discussion

Equitable contribution is the right of a party to seek contribution from a co-obligor who shares the same liability as the party seeking contribution.  See 18 C.J.S. *Contribution* § 2

- 4 -

(2015).  In the insurance context, equitable contribution allows an insurer that has paid for all or even some of a loss to seek contribution from other insurers that have insured the same risk but have not paid, or have paid less than the first insurer thinks fair.  See 16 Couch on Insurance § 222:98 (3d ed. 2014); see also Truck Ins. Exch. v. Unigard Ins. Co., 79 Cal App. 4th 966, 974 (Cal. Ct. App. 2000); Ohio Cas. Ins. Co. v. State Farm Fire & Cas. Co., 546 S.E.2d 421, 423 (Va. 2001).  While the SJC has not yet addressed whether equitable contribution is available to support a claim for contribution by one insurer against another, other Massachusetts courts have recognized its availability in actions between insurers.  See U.S. Fire Ins. Co. v. Peerless Ins. Co., No. 00-5595, 2001 WL 1688368, at *5 (Mass. Super. Ct. Dec. 20, 2001) (Gants, J.); Rubenstein v. Royal Ins. Co. of America, 44 Mass. App. Ct. 842, 852 (1998); see also Lexington Ins. Co. v. Gen Accident Ins. Co. of America, 338 F.3d 42, 49-50 & n.4 (1st Cir. 2003) (recognizing a "willingness to entertain" equitable contribution actions in the Massachusetts appeals court).

The Peerless superior court decision provides the most detailed elucidation of equitable contribution to date as accepted in Massachusetts lower courts.  In Peerless, the insured party tendered a claim to two obliged insurance companies, Peerless and U.S. Fire.  Peerless Ins. Co., 2001 WL 1688368, at *1.  Peerless

did not respond to the claim at all, while U.S. Fire ultimately paid the claim at the point of a judgment in a reach-and-apply action. Id. at *1. In turn, U.S. Fire sued Peerless for contribution. Id. at *5-6.

With one insurer "accept[ing] its coverage responsibilities" and "the second insurance company evad[ing] its obligations and pay[ing] nothing," id. at *6, Peerless reasoned that "equity demands that the responsible insurance company have legal recourse to ensure that the irresponsible company pays its fair share and reimburses the responsible company for having borne the full brunt of coverage." Id. Without this equitable principle, "the law provides an incentive for a co-insurer to run away from a claim in the hope that the other co-insurer will not." Id. The "purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by co-insurers, and to prevent one insurer from profiting at the expense of others." Id. at *5 (internal quotation marks omitted). The court explained that the rule applies when the insurance companies issued policies affording coverage for the same insured and the same risk. Id. at *6; see also Lexington Ins. Co., 338 F.3d at 50 n.5.

As described in Peerless, the right to equitable contribution does not depend on an "express contract or agreement

between the [insurers] to indemnify each other. Rather, it is based upon equitable principles that imply a contract between the parties to contribute ratably toward the discharge of a common obligation." Peerless Ins. Co., 2001 WL 1688368, at *5. This equitable principle is not without limits, though. "Absent compelling equitable reasons, courts should not impose an obligation on an insurer that contravenes a provision in its insurance policy." Id. (internal quotation marks omitted). As an example of an impermissible exercise of the court's equitable power in contravention of a policy provision, Peerless posited the following hypothetical:

> [W]hen the insured is barred from pursuing an insurance claim against Insurance Company A because, contrary to the terms of the policy, the insured voluntarily made a non-emergency payment without the prior consent of the insurance company, then Insurance Company B, even though it made full payment on its claim, should not be able to obtain equitable contribution against Insurance Company A.

Id. at *5. A successful equitable contribution action therefore requires, at least, a defendant that has an unsatisfied obligation to pay under its policy.

Neither party here disputes that the SJC would likely adopt equitable contribution in a case in which an insured looks to multiple, similarly-obligated insurers for payment. The issue here, though, is a bit trickier, because the insured apparently

- 7 -

does not want one insurer to pay anything, and has intentionally avoided giving that insurer notice of any claim (or so we can assume given the case's present posture). So that insurer, Great Northern, argues that it has never become obligated to pay, and hence equitable contribution does not apply.

ISOP's rejoinder points to the Commonwealth's notice-prejudice rule. Massachusetts insurance law generally bars an insurer from disclaiming coverage based on an insured's failure to provide prompt notice of the claim absent some proof of prejudice to the insurer. By statute, notice of a claim by an insured, notwithstanding policy terms to the contrary, is not a condition precedent to coverage. See M.G.L.A. 175 § 112.[7] The SJC expanded the statutory notice-prejudice rule to all liability policies and to defenses based on an insured's failure to cooperate with the

---

[7] Section 112 provides that:

> The liability . . . under any . . . policy insuring against liability for loss or damage on account of bodily injury or death . . . shall become absolute whenever the loss or damage for which the insured is responsible occurs . . . . An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

insurer.  See Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980); Darcy v. Hartford Ins. Co., 407 Mass. 481 (1990).  Great Northern does not argue that it was prejudiced by not learning sooner of the claim.  So if Progression (rather than ISOP) had tendered the claim belatedly to Great Northern, Great Northern would most certainly have been obligated to provide coverage to the insured under Massachusetts law.

Johnson Controls and Darcy tighten the noose further on Great Northern because, in each case, someone other than the insured gave the belated notice that triggered a coverage obligation in the absence of any prejudice to the insurer.  Johnson Controls, 381 Mass. at 282-83; Darcy, 407 Mass. at 489-90.  And because Peerless appears to hinge the availability of equitable contribution on the triggering of the insurer's coverage obligation, 2001 WL 1688368, at *5, at first glance equitable contribution would thus appear to be available in this case.  But none of those cases involved the precise situation presented here: a single, sophisticated insured intentionally opts to give notice to only one of two potential insurers.  This distinction may mean that the policy objectives driving the decisions in those cases fit less well here.

The holding in Peerless, for example, was predicated in part on a desire to protect the insured from having two insurers

each drag their feet in hopes that the other pays first. See id. at *6. Granting the insured a right to make a selective tender-- if the insured so wishes, and only for as long as it so wishes-- creates no such risk that the insured itself cannot remedy by opting for payment by both. Similarly, the notice-prejudice rule is also predicated on a desire to protect insureds. See Pilgrim Ins. Co. v. Mollard, 73 Mass. App. Ct. 326, 336 (2008); see also Unum Life Ins. Co. of America v. Ward, 526 U.S. 371, 372–73 (1999). Allowing the insured to make a selective tender poses no threat of any such harm. To the contrary, selective tender gives the insured for each policy bought by the insured the full range of options that the insured would otherwise have had but for the decision to buy two policies. As the district court observed, the "insured may choose not to tender a claim for a number of reasons, including a desire not to avoid a premium increase or to maintain its policy limits for other claims." Ins Co. of Pa. v. Great N. Ins. Co., 43 F. Supp. 3d 76, 82 (D. Mass. 2014).

Citing Boston Gas Co. v. Century Indem. Co., 454 Mass. 337 (2009), ISOP contends that the SJC has already signaled that it assigns little weight to the insured's choice of which among several obligated insurers should pay. Actually, Boston Gas addressed the extent to which each successive insurer was obligated to the insured for a continuing loss, and did not say anything

about the insured's ability to select between two insurers obligated for the same loss.

This is not to say that selective tender makes obvious sense as a rule. The parties point us to only a few jurisdictions that have expressly adopted the rule. See Inst. of London Underwriters v. Hartford Ins. Co., 234 Ill.App.3d 70, 73 (1992); accord Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wash.2d 411, 421 (2008); Cas. Indem. Exch. Ins. Co. v. Liberty Nat'l Fire Ins. Co., 902 F. Supp. 1235, 1239 (D. Mont. 1995). See generally 16 Couch on Ins. § 200:37 (3d ed. 2014). The rule has been employed sparingly even within Illinois, where the doctrine originated. See AMCO Ins. Co. v. Cincinnati Ins. Co., 10 N.E.3d 374, 379 (Ill. App. Ct. 2014). See generally Inst. of London Underwriters, 234 Ill.App.3d at 73. Indeed, in its briefs and at oral argument, Great Northern did not affirmatively argue in favor of adopting selective tender by name. Great Northern instead couched its appeal in terms of having no coverage obligation because the insured chose not to give notice. But this is functionally equivalent to the selective tender rule, which is precisely how the district court interpreted it.

This is to say, instead, that there is presented here a question of law and policy dispositive of this case upon which the

SJC has not spoken. See S.J.C. Rule 1:03.[8] We must therefore decide between making an "informed prophecy," or certifying the question to the SJC. See Showtime Entertainment, LLC v. Town of Mendon, 769 F.3d 61, 79 (1st Cir. 2014) (internal quotation marks omitted). "The first path offers the benefit of expedition but with the risk of error; the second path, the reverse." Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 13 (1st Cir. 2008). In considering these two paths, we note that actions brought in Massachusetts between two insurers very likely present the potential for invoking diversity jurisdiction. Therefore, if we answer the question posed here, every company that the answer favors is likely to file or remove a case to federal court from Massachusetts state court, reducing the odds that the SJC will get to decide this issue. Nor do we doubt that the SJC is more familiar than are we with the nuances of insurance coverage and related regulation under Massachusetts law.

For these reasons, we certify the following question of Massachusetts law to the Massachusetts Supreme Judicial Court:

> Where two workers' compensation insurance
> policies provide coverage for the same loss,

---

[8] The SJC "may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . if there are involved in any proceeding before it questions of [Massachusetts] law . . . which may be determinative of the cause . . . and as to which it appears to the certifying court there is no controlling precedent in the decisions" of the SJC. S.J.C. Rule 1:03.

may an insured elect which of its insurers is to defend and indemnify the claim by intentionally tendering its defense to that insurer and not the other and thereby foreclose the insurer to which tender is made from obtaining contribution from the insurer to which no tender is made?

## IV.  Conclusion

The clerk of this court is instructed to transmit to the SJC under the official seal of this court, a copy of the certified question and our opinion in this case, along with copies of the parties' briefs, appendix, and any supplemental filings under Rule 28(j) of the Federal Rules of Appellate Procedure.  We retain jurisdiction over this appeal.

So ordered.