EMPLOYERS INSURANCE OF WAUSAU, a Wisconsin mutual company, Plaintiff–Appellant,

v.

JAMES McHUGH CONSTRUCTION COMPANY, The University of Chicago, a not-for-profit, Northbrook Property & Casualty Company, et al., Defendants–Appellees.

No. 97–2346.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1998.

Decided May 27, 1998.

William H. Jones, Peter M. King (argued), Chicago, IL, for Employers Ins. of Wausau.

Robert J. Franco, II (argued), Christopher M. Cano, Bollinger, Ruberry & Garvey, Chicago, IL, for James McHigh Construction Co.

Jeffrey A. Siderius (argued), Oppenheimer, Wolff & Donnelly, Chicago, IL, for University of Chicago, Northbrook Property & Cas., Co., and St. Paul Fire & Marine Ins. Co.

Before BAUER, RIPPLE and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Appellant Employers Insurance of Wausau appeals from the district court's grant of summary judgment to the defendants on Wausau's complaint for declaratory and monetary relief stemming from an insurance coverage dispute. For the reasons discussed below, we affirm.

## BACKGROUND

The underlying facts in this case are fairly straightforward and are not disputed by the parties. In July 1992, appellee James McHugh Construction Company ("McHugh") was hired as a contractor by Stein & Company Program Management, Inc. ("Stein") for a project undertaken for the University of Chicago (the "University"). Specifically, the project at issue was the construction of the University's Graduate School of Business at Cityfront Center. McHugh, in turn, hired Pitt–Des Moines, Inc. ("PDM") as the structural steel sub-contractor. As part of its contract with McHugh, PDM was required to provide certain insurance, and PDM took out a policy with appellant Employers Insurance of Wausau ("Wausau") to fulfill its obligations. In the Wausau policy, McHugh, Stein, and the University were all named as additional insureds. McHugh also had its own general liability insurance with appellee St. Paul Fire & Marine Insurance Company ("St.Paul"), which named the University as an additional insured, and the University was itself insured by appellee Northbrook Property & Casualty Company ("Northbrook"). This tangled web of policies is the catalyst for the present suit.

On January 18, 1995, John Budeselich, an ironworker at the University construction site, filed suit against McHugh and the University in the Circuit Court of Cook County, Illinois. Budeselich claimed that he was injured at the site on July 7, 1993, due to the wrongful and negligent acts of McHugh and the University, and also sought relief under the Illinois Structural Work Act, 740 ILCS 150/1 et seq.[1] McHugh notified Wausau on January 26, 1995, requesting that Wausau defend and indemnify it (as well as the University) against the Budeselich suit. After other correspondence, Wausau acknowledged that McHugh and the University were additional insureds under the PDM policy, but requested that the parties also tender their defenses to their own insurance companies so that the cost of the defense could be split among the insurers. McHugh refused on behalf of itself and the University to tender the defense to their insurers, and refused to reconsider its decision after Wausau sent it another letter in January 1996. McHugh and the University proceeded to hire lawyers to defend them in the Budeselich suit. As of February 28, 1997, Wausau had expended $7,125 in defense of the suit.

On November 4, 1996, Wausau filed the present suit against McHugh and the University, as well as against St. Paul and Northbrook. With regard to McHugh and the University, Wausau sought a declaratory judgment that either: 1) McHugh and the University had an obligation under the Wausau policy to tender their defenses to St.

---

1. The Structural Work Act was repealed effective February 14, 1995, but that did not affect claims accruing before that date. 1995 Ill. Laws P.A. 892.

Paul and Northbrook, respectively, and that their failure to do so was a breach of the insurance contract with Wausau which voided its coverage; or 2) Wausau is only required to pay its pro rata share of the defense of the Budeselich case. Wausau also sought monetary relief for the amounts it had expended in defending McHugh and the University. With respect to St. Paul and Northbrook, Wausau sought a declaratory judgment that St. Paul and Northbrook must pay their pro rata shares of the defense costs of McHugh and the University, and also sought monetary relief and equitable subrogation. After some discovery, the parties filed cross-motions for summary judgment, and on April 21, 1997, Judge Conlon granted the defendants' motions and denied the plaintiff's motion. Judgment was entered the same day, and Wausau filed a timely notice of appeal on May 20, 1997. With these facts in mind, we turn to Wausau's contentions on appeal.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *McGinn v. Burlington Northern Ry. Co.*, 102 F.3d 295, 298 (7th Cir.1996) (citation omitted). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We view the record and extract all reasonable inferences from it in the light most favorable to the nonmoving party. *McGinn*, 102 F.3d at 298 (citation omitted). Only disputes that could affect the outcome of the suit under governing law will preclude an entry of judgment for the moving party. *Id.*

### I. Applicability of Institute Decision

In the district court, Wausau argued that the court should find that McHugh and the University breached their contract with Wausau, thus ending Wausau's obligation to defend and indemnify them. The claimed breach was the failure of McHugh and the University to tender their defenses to their own insurance companies as well as to Wausau. Wausau claimed that the insurance contract required McHugh and the University to tender their defenses to their own insurers, pointing to the following language:

**2. Duties In The Event Of Occurrence, Claim or Suit.**

· · · · ·

c. You and any other involved insured must:

· · · · ·

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

· · · · ·

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

McHugh and the University, in turn, argued that they were well within their rights in tendering their defense solely to Wausau, based on the Illinois Appellate Court case of *Institute of London Underwriters v. The Hartford Fire Insurance Company*, 234 Ill. App.3d 70, 175 Ill.Dec. 297, 599 N.E.2d 1311 (1992). The district court rejected Wausau's argument and accepted that of the appellees, and granted summary judgment based on *Institute*. Wausau repeats its claims here, arguing that the district court erroneously relied on *Institute*, a threshold issue which we examine *de novo*. In order to do so, however, we must first relay a rather lengthy rendition of the background facts of *Institute*.

In *Institute*, the Illinois Appellate Court confronted this question: "where two insurance policies potentially apply to a loss, may

an insured elect which of its insurers is to defend and indemnify the claim by tendering its defense to one insurer and not the other and thereby foreclose the [defending] insurer from obtaining contribution from the [non-defending] insurer?" 175 Ill.Dec. 297, 599 N.E.2d at 1313. The facts in *Institute* were straightforward and analogous to the present case. The Great Lakes Towing Company ("Great Lakes") hired Thatcher Engineering Corporation ("Thatcher") to perform repairs on a damaged dockwall owned by Great Lakes. The agreement between the parties required Thatcher to have Great Lakes named as an additional insured on its liability policy for any injuries or deaths occurring during the project. Thatcher complied and had its insurer, Institute of London Underwriters ("Institute"), issue a certificate naming Great Lakes as an additional insured with respect to the project. Great Lakes was itself insured by the Hartford Fire Insurance Company ("Hartford"). *Institute*, 175 Ill.Dec. 297, 599 N.E.2d at 1312.

At some point, Thatcher employee Richard Garcia died while working on the Great Lakes project, and his estate filed suit against Great Lakes in August 1987. Great Lakes tendered its defense of this suit (the "Garcia suit") to Thatcher and requested that Thatcher provide it with assurances that any liability of Great Lakes would be covered by Institute. Great Lakes also informed Hartford of the Garcia suit. In September 1987, the Garcia suit was dismissed without prejudice, and Great Lakes' president alerted Hartford to this fact in a letter. Great Lakes' president also noted that while the litigation could be recommenced, Great Lakes had no involvement in the accident and that Institute had the primary duty to defend Great Lakes in any further proceedings. In February 1988, Great Lakes received a letter from attorney C. Roy Peterson ("Peterson") advising Great Lakes that the Garcia suit had been re-filed and that he would file an answer denying Great Lakes' liability, pursuant to the Institute policy. Since the damage claim exceeded the limits of the Institute policy, Peterson advised Great Lakes to contact its excess insurance carrier. Pursuant to this advice, Great Lakes notified Hartford of the suit and informed it that Peterson was defending Great

Lakes pursuant to the Thatcher contract. *Institute*, 175 Ill.Dec. 297, 599 N.E.2d at 1312.

In January 1989, a Hartford employee called Peterson to have him represent Great Lakes in the Garcia suit. It was undisputed, however, that Great Lakes had not requested Hartford to defend or indemnify it with respect to the Garcia suit. In February, the Garcia case settled, and Peterson wrote several letters to Hartford requesting that it contribute half of the settlement amount. Great Lakes had not instructed Peterson to contact Hartford, and Great Lakes' vice president had informed both Peterson and Hartford that Hartford should not respond to the Garcia suit but rather let Institute handle the entire matter. In the end, Hartford did not pay any of Great Lakes' defense or settlement costs, and Institute sued it for contribution. *Institute*, 175 Ill.Dec. 297, 599 N.E.2d at 1312–13.

The Illinois Appellate Court affirmed the decision of the Circuit Court of Cook County, which found that Great Lakes' determination that Institute should defend and indemnify it precluded Institute from seeking contribution from Hartford. The doctrine of equitable contribution, under which Institute sought recovery from Hartford, "permits one who has paid the entire loss to be reimbursed from other insurers who are also liable for the loss." *Institute*, 175 Ill.Dec. 297, 599 N.E.2d at 1313 (quoting *Pekin Ins. Co. v. Cincinnati Ins. Co.*, 157 Ill.App.3d 404, 109 Ill.Dec. 656, 510 N.E.2d 524, 526 (1987) (other citations omitted)). While recognizing that the Garcia suit came within the coverage of both the Institute and Hartford policies, the court found that Great Lakes' "refusal or failure to tender the defense of the action to Hartford excused Hartford's duty to perform under its policy or to contribute to a settlement procured by a co-insurer." *Institute*, 599 N.E.2d at 1315. In its opinion granting summary judgment to the appellees in this case, the district court relied on *Institute*, finding that the fact that McHugh and the University tendered their defense to Wausau and not to Northbrook or St. Paul precluded Wausau's action for contribution and breach of contract.

Wausau points to the fact that this court has previously disagreed with Institute, citing *Rhone–Poulenc Inc. v. International Ins. Co.*, 71 F.3d 1299 (7th Cir.1995). In *Rhone*, we stated:

> Now whether a disclaimer of liability for contribution in an insurance policy would actually be effective may be doubted. The right is not the insured's to disclaim. It is a right of other insurers, who are not parties to the insurance policy, and it is a right founded not on the concept of third-party beneficiaries of contracts and hence not on "the wishes of the insured" but rather on notions of equity and unjust enrichment.... *[Institute]*, while reciting the general principle, appears to undermine it by holding that for the right of contribution to arise, the insured must have asked the insurer who later asserted the right to defend him, a rule that despite the court's disclaimer appears to make the right of contribution depend on the wishes of the insured.

*Rhone*, 71 F.3d at 1305. Wausau overlooks the next sentence of our discussion, however, where we noted that "the precise scope of the right of contribution among insurers under Illinois law is irrelevant to this appeal." *Id.* Our discussion of Institute in Rhone is mere dicta, and it does not serve to preclude our reliance on an Illinois Appellate Court opinion setting forth principles of Illinois law.

Two other decisions of the Illinois Appellate Court (which were not cited by any of the parties on appeal) also support the idea of a "targeted tender" by the insured. In *Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 282 Ill.App.3d 716, 218 Ill. Dec. 143, 668 N.E.2d 627 (1996), the Illinois Appellate Court, Second District, found that actual notice of a claim against the insured may be sufficient to trigger the insurer's duty to defend. 218 Ill.Dec. 143, 668 N.E.2d at 633. In Federated Mutual, an employee of a car dealer "borrowed" one of his employer's cars for the weekend, apparently to take some of his friends to a Halloween party in Chicago. Car and passengers arrived at the party safely, but were tricked rather than treated on the way home when the car (which was driven by one of the employee's friends, Kathleen Gallagher) was involved in an accident. All in the car were injured and

promptly sued Gallagher for negligence. Gallagher notified State Farm, her insurer, which in turn notified the car dealer's insurer, Federated Mutual. State Farm told Federated Mutual of the suit, stated that Federated was the primary insurer for the suit, and asserted that it was tendering defense of the suit to Federated. Federated balked at this turn of events and filed a declaratory judgment action against State Farm seeking an order stating that Federated had no duty to defend Gallagher for various reasons. *Id.* at 628.

Federated eventually filed a motion for summary judgment in the case, asserting that it had no duty to defend Gallagher because she had not tendered her defense to Federated. State Farm and Gallagher did not dispute this fact, and Federated admitted that it had knowledge of the underlying lawsuit. The trial court granted Federated's motion. On appeal, State Farm admitted that Gallagher had tendered her defense to it, that it insured her, and that she had not tendered her defense to Federated. It argued, however, that Federated's duty to defend Gallagher was triggered when it received actual notice of the underlying suit, notwithstanding the fact that the defense had not been tendered to it directly. *Id.* at 628–29. The Second District agreed and reversed the decision of the Circuit Court.

In reaching its holding, the court rejected the distinction between sophisticated and unsophisticated insureds contained in *Institute*, finding that "despite any special experience, competence, or resources the insured may possess-actual notice of a claim against the insured may be sufficient to trigger the insurer's duty to defend." *Id.* at 633. For these purposes, "actual notice" was defined as "notice sufficient to permit the insurer to locate and defend the lawsuit." *Id.* (citing *Long v. Great Central Ins. Co.*, 190 Ill. App.3d 159, 137 Ill.Dec. 794, 546 N.E.2d 739, 744 (1989), appeal denied, 129 Ill.2d 564, 140 Ill.Dec. 672, 550 N.E.2d 557 (1990)). This holding rejected a "written tender rule," whereby sophisticated insureds had to provide a written tender of their defense to the insurer in order for the tender to be effec-

tive. In rejecting this rule, the Second District stated:

> we hold that an insurer's duty to defend claims potentially falling within the terms of a policy is triggered by actual notice of a lawsuit, regardless of whether the insured is sophisticated or unsophisticated—provided the insured has not selected one insurer to provide an exclusive defense and there is no prejudice to the insurer.

*Federated Mutual,* 218 Ill.Dec. 143, 668 N.E.2d at 633. Therefore, the fact that State Farm had tendered Gallagher's defense to Federated, rather than Gallagher herself, was of no consequence and provided Federated with actual notice of the claim.[2] Additionally, the court found that no evidence showed that Gallagher had affirmatively chosen State Farm, after considering her options, to provide an exclusive defense. Thus, the court determined that Federated had the duty to defend Gallagher in this case. *Id.* at 634.

The Second District followed *Federated Mutual* in *Cincinnati Cos. v. West American Ins. Co.,* 287 Ill.App.3d 505, 223 Ill.Dec. 147, 679 N.E.2d 91, *appeal allowed,* 174 Ill.2d 556, 227 Ill.Dec. 3, 686 N.E.2d 1159 (1997). In brief, the facts of the case are these: a worker who was injured while performing construction activities at a site sued Baird Land Surveyors ("Baird") and B & D Home Repair and Builders ("B & D"), other contractors employed at the site. Cincinnati insured another (nondefendant) contractor at the site, with Baird named as an additional insured. Upon receipt of service of process, Baird tendered its defense to its own insurer who, in turn, tendered it to Cincinnati. Unbeknownst to Baird, however, it was also named as an additional insured on B & D's insurance policy with West American. Despite propounding interrogatories to B & D during the underlying litigation, Baird did not find out that it was an additional insured on the B & D policy until the eve of trial. When Baird's defense was tendered to West American (either by its attorney or by Cincinnati, the case is not clear), West American rejected the tender. The underlying suit eventually settled, and Cincinnati brought suit against West American seeking reimbursement for half of the settlement it made on Baird's behalf and for half of the attorney's fees it expended in defending Baird. The Circuit Court of DuPage County granted summary judgment to Cincinnati, and West American appealed. *West American,* 223 Ill. Dec. 147, 679 N.E.2d at 92–93.

■ The Illinois Court of Appeals, Second District, affirmed the circuit court and reiterated its rejection of *Institute,* stating that it would not follow *Institute* "except in those instances where the insured has specifically selected one insurer to provide an exclusive defense and there is no prejudice to the insurer." *Id.* at 95. The court found that under the circumstances, Baird did not, at any time, affirmatively choose either Cincinnati or West American to provide an exclusive defense. At the time it tendered its defense to Cincinnati, Baird did not even know that it was insured under the West American policy, and once Baird found out that it was, its defense was immediately tendered to (and rejected by) West American. There was thus no indication that "Baird investigated the matter, concluded that it might be insured by West American, and then selected Cincinnati to defend it rather than West American." *Id.* The court also found that West American had actual knowledge of the suit against Baird, since it was the insurer for co-defendant B & D. Accordingly, the court found that *Institute* was not applicable and that West American was liable for half of Cincinnati's costs in defending Baird. *Id.* at 96.

Therefore, while the formal tender rule of *Institute* has been rejected by the Illinois Appellate Court, its central holding remains vital. Looking at the facts of this case, we find, as did the district court, that the principles of *Institute* (and *West American* and *Federated Mutual*) apply to this case and foreclose Wausau's suit. First, the uncontradicted evidence shows that McHugh and the University specifically selected Wausau to provide their defense, rather than St. Paul or Northbrook. Upon receiving notice of the

---

2. Wausau did not allege, either on appeal or below, that St. Paul or Northbrook had actual notice of the underlying suit, and has accordingly waived this argument. *Oates v. Discovery Zone,* 116 F.3d 1161, 1168 (7th Cir.1997) (arguments not raised in district court are waived on appeal).

suit against it, McHugh's Director of Risk Management, Ralph G. Pound, sent a letter to Wausau specifically stating that McHugh (and, apparently, the University[3]) was "expressly electing to tender the defense and indemnity of this case to you, and not to our other carrier." *See* McHugh App. at 157. The letter cited *Institute,* and noted that McHugh (and the University) determined that Wausau should bear all costs arising from the Budeselich suit "with no contribution from our other carrier." *Id.* This evidence clearly indicates that the appellees affirmatively chose Wausau to provide their defense rather than their other insurers, and meets the first "targeted tender" requirement.

In addition, the evidence does not indicate that Wausau would be prejudiced in any way by having to provide the sole defense for McHugh and the University. The evidence presented to the district court establishes that Wausau was informed by McHugh of the Budeselich suit a little more than a week after it was filed, and Wausau accepted their defense even though, in its view, St. Paul and Northbrook should share in the costs. See Rec. Doc. 21 exh. 12. Wausau's incorrect assumption that it would only be responsible for part of the defense costs of McHugh and the University, rather than all of them, does not amount to prejudice. Having met the conditions of *Institute,* as modified by *Federated Mutual* and *West American,* McHugh and the University were entitled, as a matter of Illinois law, to tender their defense to the insurance company of their choosing, and the district court did not err in finding that *Institute* was controlling in this case.

## II. Breach of Contract

■■■ As we have already noted, Wausau claims that its contract with PDM (and, by virtue of their being named additional insureds, McHugh and the University as well) obligated McHugh and the University to tender their defenses to St. Paul and Northbrook as well as to Wausau, and that their failure (or refusal) to do so constitutes a breach of contract which ends Wausau's obligation to defend them. The construction of an insurance policy is a question of law, *Outboard Marine Corp. v. Liberty Mutual Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212 (Ill.1992), which this court undertakes *de novo.* In construing an insurance policy, the court must ascertain the intent of the parties to the contract by construing the policy as a whole while giving due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Id.* When the words of the policy are unambiguous, they are afforded their plain, ordinary and popular meaning. *Id.* If the words are susceptible to more than one interpretation, however, they are ambiguous and are to be construed in favor of the insured and against the insurer. *Id.; see also Dixon Distributing Co. v. Hanover Ins. Co.,* 161 Ill.2d 433, 204 Ill.Dec. 171, 641 N.E.2d 395, 399 (1994). With these principles in mind, we turn to Wausau's contentions.

Wausau relies on several provisions in the PDM policy, asserting that they require McHugh and the University to tender their defenses to their own insurers. First, Wausau points to this language:

**2. Duties In The Event Of Occurrence, Claim or Suit.**

　·　　　·　　　·　　　·　　　·

c. You and any other involved insured must:

　·　　　·　　　·　　　·　　　·

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Wausau argues that Illinois and federal courts alike have recognized the importance

---

**3.** Although the letter did not specifically state that the University also was tendering its defense solely to Wausau, Wausau apparently understood the letter to have done so. See App. at 56 ("we are in receipt of your tender of the defense of James McHugh Construction Company and the University of Chicago...."). No challenge has been offered to this understanding, and we do not question it here.

of such clauses and have enforced their provisions. To support this proposition, Wausau cites *Purze v. American Alliance Ins. Co.*, 781 F.Supp. 1289 (N.D.Ill.1991) and *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). These cases, however, do not lend credence to Wausau's argument.

In *Purze*, the district court (Judge Easterbrook, sitting by designation) found that the plaintiffs had violated the cooperation clause in their insurance policy with the defendant (which was nearly identical to the one at issue here) by refusing to provide the defendant insurer with information regarding their claim. As Judge Easterbrook stated, "[the insurance company] had solid reasons to investigate, and the [plaintiffs] were basically uncooperative. Their disregard of obligations under the cooperation clause prevents collection on the contract of insurance." *Purze*, 781 F.Supp. at 1294. Similarly, *Waste Management* involved insureds who refused to tender certain documents, which they believed were protected by the attorney-client privilege and the work product doctrine, to their insurer. *Waste Management*, 161 Ill.Dec. 774, 579 N.E.2d at 325. Thus, neither case addressed conduct analogous to that in the present case but rather dealt with the insured's duty to provide information regarding the basis of a claim to the insurer, and neither sheds any light on the present circumstance.

 It is true, as Wausau asserts, that "[a]ny condition in the policy requiring cooperation on the part of the insured is one of great importance ... and its purpose should be observed." *Waste Management*, 161 Ill.Dec. 774, 579 N.E.2d at 327 (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809, 811 (1977)) (other citations omitted). However, as also stated by the Illinois Supreme Court, "[t]he basic purpose of a cooperation clause is to protect the *insurer's interests* and to prevent collusion between the insured and the injured party." *Id.* (emphasis added). When an insurer asserts that a cooperation clause has been breached, the burden of proof is on the insurer to prove what constitutes that breach. *M.F.A. Mut. Ins.*, 6 Ill.Dec. 862, 363 N.E.2d at 811 (citations omitted). With

these purposes in mind, we turn to the language of the Wausau policy.

Clause (3) above, which requires McHugh and the University to cooperate with Wausau "in the investigation, settlement or defense of the claim or 'suit,' " is typical of the cooperation clauses of many insurance policies. *See* Jeffrey W. Stempel, Interpretation of Insurance Contracts 767–768 (1994) (hereinafter "Stempel"). Such clauses, in general, have been deemed to place the following duties on the insured: provide relevant records and make a reasonable reconstruction of the events surrounding a claim; attend depositions and other legal proceedings; provide truthful testimony at trial; make reasonable efforts to obtain the cooperation of acquaintances with helpful knowledge; sign any papers required in connection with the claim; and attend the trial or hearing on the matter. *Id.* at 772–774. While Wausau quotes the language from the cooperation clause in its brief, it does not argue (nor does the evidence suggest) that McHugh or the University have failed to meet any of these required duties with regard to the defense or settlement of the Budeselich suit. As such, the language of Clause (3) does not provide Wausau with any defense against coverage in this case.

 Clause (4), which requires McHugh and the University, if called upon, to assist Wausau "in the enforcement of any right against any person or organization which may be liable to the insured," also represents a duty to cooperate on the part of the insured, but it pertains to the insurer's right of subrogation. Stempel at 768. Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim ... so that he who is substituted succeeds to the rights of the other in relation to the ... claim, and its rights, remedies, or securities." Black's Law Dictionary 1427 (6th ed.1990). As this court has previously noted, Illinois recognizes the doctrine of subrogation as a flexible and broad tool for the accomplishment of justice. *National Cash Register Co. v. UNARCO Indus., Inc.*, 490 F.2d 285, 286 (7th Cir.1974). The Illinois Supreme Court has explained subrogation thusly:

This legal concept originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoer.

*Geneva Constr. Co. v. Martin Transfer & Storage Co.,* 4 Ill.2d 273, 122 N.E.2d 540, 546 (1954) (citations omitted).

As the district court found, however, this clause was not applicable in the present situation because the decision in *Institute*, as discussed above, gave McHugh and the University the right to choose one insurance company to provide their whole defense. The parties did precisely that, choosing Wausau over Northbrook and St. Paul, and, as a result, no other insurer is liable to McHugh or the University. In its brief, Wausau attempts to circumvent the district court's decision by highlighting that its policy required McHugh and the University to assist Wausau in pursuing claims against any person or organization which *may* be liable to them, not only against those entities that are liable to them. *See* Appellant's Brief at 13. Through *Institute* and its progeny, however, no insurance company except Wausau had potential liability to McHugh or the University after their defense had been tendered to Wausau—*Institute* made Wausau the only insurer who was liable, period. It is true that, in the span between the filing of the Budeselich suit and the time McHugh and the University tendered their defenses to Wausau, St. Paul and Northbrook potentially were liable to McHugh and the University because their policies also potentially covered the Budeselich suit. This potential liability was erased, however, once the appellees knowingly tendered their defense only to Wausau, and thus there were no parties potentially liable to the appellees which Wausau could coerce them to pursue. The logical effect of *Institute,* as the district court deter-

mined, was to preclude any other insurer's liability (or potential liability) to McHugh and the University, and the district court properly found that McHugh and the University did not breach their contract with Wausau by failing to tender their claims to the other insurers.

Wausau also argues that the Transfer of Rights clause of the insurance contract with McHugh and the University was breached. This clause stated that:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after the loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*See* Wausau App. at 25. Wausau asserts that the appellees' failure to tender the claim to their own insurers "impaired" Wausau's rights against St. Paul and Northbrook. However, *Institute* and its progeny also foreclose this argument. McHugh and the University have the right to choose which insurer they want to defend them, and their doing so cannot be said to legally impair any right they had against any other insurers. Indeed, Wausau has cited no cases from any jurisdiction holding that an insurer may force its insured, under the language of the insurance policy, to tender its claims to another insurance company as well. In sum, McHugh and the University did not breach any of their contractual duties of cooperation contained in the Wausau policy, and Wausau is not entitled to abdicate its duty to defend on that basis.[4]

Wausau next focuses on St. Paul and Northbrook, asserting that they are liable for their pro rata shares of the defense of McHugh and the University because of a contractual right of contribution possessed by Wausau. Wausau alleges that all three insurers' policies were "excess" policies (that is, not "primary" policies) and that, pursuant to Illinois law, all three insurers are therefore liable for their pro rata shares of the defense of McHugh and the University.

---

4. Wausau additionally argues that the contract breaches by McHugh and the University are ma-

terial; since we found no breaches, however, we need not reach this contention.

This argument fails under Institute and its progeny as well, since Wausau was chosen by McHugh and the University to provide a defense. Wausau, therefore, is not entitled to any contractual remedies in this case, and the district court properly granted summary judgment to the appellees on these claims.

### III. Equitable Contribution

Finally, Wausau contends that regardless of whether McHugh and the University breached the contract, Northbrook and St. Paul are liable for their pro rata shares of the defense under the doctrine of equitable contribution. Simply put, equitable contribution permits an insurer who has paid for an entire loss to be reimbursed by other insurers who are also liable for the loss, and it is applied where one insurer has paid a debt equally owed by other insurers. *West American*, 223 Ill.Dec. 147, 679 N.E.2d at 94. From these principles, it follows that, as the Illinois Appellate Court found in *Institute*, "there can be no contribution where a loss is not equally owed by both insurers." *Institute*, 175 Ill.Dec. 297, 599 N.E.2d at 1316 (citations omitted). And, as we discussed above, *Institute* and its progeny dictate that Northbrook and St. Paul, by virtue of McHugh and the University tendering their defense solely to Wausau, are not liable for any amount of the defense in this case. Wausau once again cites *Rhone–Poulenc*, 71 F.3d at 1305, for the proposition that the right of contribution is not the insured's to disclaim. As we previously noted, however, the discussion of contribution in *RhonePoulenc* was dicta because "the precise scope of the right of contribution among insurers under Illinois law" was irrelevant to the appeal at hand. *Id.* The district court, therefore, was correct in determining that Wausau was not entitled to equitable contribution.[5]

### CONCLUSION

Since Illinois law allowed McHugh and the University to choose one insurer to provide their whole defense, they did not breach their contract with Wausau by failing to tender their claims to Northbrook and St. Paul.

---

**5.** Appellees St. Paul and Northbrook argued, alternatively, that they are not liable for equitable contribution because the Wausau insurance is primary by virtue of a "flow-down" provision

Additionally, since St. Paul and Northbrook had no duty to defend by virtue of the targeted tender made by McHugh and the University, Wausau is not entitled to equitable contribution for the costs of the defense. We therefore AFFIRM the judgment of the district court.

contained in the McHugh–PDM contract. Since we find that equitable contribution is precluded here as a matter of law, we need not reach the merits of this argument.